[Civ. No. 42834. First Dist., Div. Three. Apr. 6, 1979.]

CONGREGATION OF RODEF SHOLOM OF MARIN,
Plaintiff and Appellant, v.
AMERICAN MOTORISTS INSURANCE COMPANY,
Defendant and Respondent.

## COUNSEL

David McCarville and James L. English for Plaintiff and Appellant.

Dunn & McDonald, James T. McDonald and Michael J. Murray for Defendant and Respondent.

## OPINION

**SCOTT, Acting P. J.**—When Steven H. was 16 years old, he set a fire in a wastebasket in a classroom at the appellant Congregation of Rodef Sholom (Congregation) synagogue in Marin County, causing property damage in the amount of $48,770.01. The Congregation filed suit for damages and judgment for the full amount was entered.

At the time of the fire Steven, residing in his parents' household, was an additional insured under a comprehensive homeowner's personal liability insurance policy issued to his parents by respondent American Motorists Insurance Company. American denied coverage for the damage to the Congregation based upon an exclusionary clause in its policy, which provided: "Exclusions: (c) To injury, sickness, disease, death or destruction caused intentionally by or at the direction of the insured."

The Congregation then brought the instant action, seeking to establish that American was liable under the policy to satisfy the judgment against Steven notwithstanding the exclusionary clause. The essence of the Congregation's argument at trial was that the exclusionary clause was inapplicable because Steven did not have the requisite mental capacity to intentionally cause damage.

The issues on appeal are 1) the adequacy of the court's instruction to the jury on the question of whether Steven "intentionally" caused property damage to the premises of the Congregation, and 2) whether the court erred in failing to give an instruction that respondent insurance carrier had the burden of proof as to the applicability of the exclusionary clause. We conclude that the court erred in both particulars, requiring a reversal of the judgment.

Prior and subsequent to the fire Steven was under the care of a psychiatrist, William Lamers. Lamers testified that Steven was suffering from a mental disease diagnosed as "adolescent adjustment reaction." Steven admitted to Lamers the setting of the synagogue fire as well as several other building fires. Steven told Lamers that when he was in the synagogue classroom, it reminded him of classrooms where he had been bullied, shoved, and teased by classmates, and that the feeling of having been rejected and bullied was so strong in him that he had an overwhelming desire to start a fire. Steven testified to the same effect at trial.

Lamers also testified that at the time of the fire Steven could distinguish between right and wrong, and could form a rational intent to do the act of starting a fire. However, Lamers also testified that when Steven set the fire, he was "impelled by an impulse which he did not have the power to resist." Lamers was of the opinion that Steven exhibited paranoid tendencies of delusions and auditory hallucinations. He con-

cluded that Steven had a schizoid personality caused by mental disease which existed on the date Steven started the synagogue fire.

Conflicting testimony was presented by clinical psychologist Wendell R. Wilkin, who was of the opinion that Steven was capable of knowing and understanding the nature and quality of his act, and that he had the capability of understanding that his act was wrong in a moral sense. He was of the further opinion that Steven's behavior in setting the fire represented a pattern of behavior which would make it contrary to an impulsive kind of act. He described Steven's conduct as characterized by systematic planning, a certain amount of caution which prevented him from being detected, and a certain amount of shrewdness and wariness.

The trial court construed the intentional injury exclusion as inapplicable only when the insured did not understand the nature and quality of his act, or was incapable of distinguishing between right and wrong. In effect, the trial court concluded that only when the insured's conduct was such that he could be deemed legally insane for criminal responsibility purposes according to the M'Naghten test, would that conduct be not intentional as the word was used in the exclusionary clause.

The court concluded, and the Congregation concedes, that the evidence submitted at trial failed to establish that Steven was legally insane according to the M'Naghten definition of insanity at the time he set the fire at the synagogue.[1]

The court refused appellant's proposed instruction that the burden of proof as to the applicability of the exclusionary clause was on the insurer.

In instructing the jury, the court defined intent as "A determination to act in a certain way, an intended object," and then gave the jury a single special interrogatory: "At the time the fire was set by Steven [H], did he intentionally cause property damage to the premises of the Congregation of Rodef Sholom beyond the point of origin of the fire." The jury

---

[1] At the time of the trial, the M'Naghten test was the long accepted test of insanity as a defense in a criminal action in California. In *People* v. *Drew* (1978) 22 Cal.3d 333, 336-337 [149 Cal.Rptr. 275, 583 P.2d 1318], footnote 3, the Supreme Court rejected the M'Naghten test in favor of the test proposed by the American Law Institute: " 'A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of law.' "

answered the interrogatory affirmatively, and judgment was entered for respondent American.

Initially, we observe that *Meyer v. Pacific Employers' Ins. Co.* (1965) 233 Cal.App.2d 321, 327 [43 Cal.Rptr. 542], makes clear the "fact that an act which causes an injury is intentional does not take the consequence of that act outside the coverage of a policy which excludes damage unless caused by accident for if the consequence that is the damage or injury is not intentional and is unexpected it is accidental in character." ■ As the court properly instructed, it is the intent to cause damage beyond the point of origin of the fire which is the intent that makes the exclusion applicable, and whether Steven had that intent was the question to be decided by the jury.

What was inadequate in the court's instruction was guidance to the jury as to how they were to determine if Steven acted "intentionally."

In *Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865 [151 Cal.Rptr. 285, 587 P.2d 1068], a Dr. Lovelace killed his employer, Dr. Clemmer, and was convicted of second degree murder after withdrawing a plea of not guilty by reason of insanity. Clemmer's widow obtained a default judgment against Lovelace for wrongful death. The widow then brought an action against Hartford, insurer of Lovelace on a comprehensive personal liability policy. ■ ■ Hartford denied coverage based on an exclusionary clause and Insurance Code section 533, which provides that an insurer is not liable for a loss caused by the willful act of the insured.[2] The Supreme Court rejected Hartford's contention that the plaintiffs were estopped by Lovelace's criminal conviction from denying the willfulness of his act in killing Clemmer in a subsequent action against his insurer. The court concluded the plaintiffs' interest in litigating Lovelace's willfulness differed from the interest of Lovelace in litigating that issue at his criminal trial; thus collateral estoppel was not justified, despite his withdrawal of his plea of insanity at that criminal trial.

---

[2] Insurance Code section 533 has been described as "a part of every insurance contract and is equivalent to an exclusionary clause in the contract itself." (*Evans v. Pacific Indemnity Co.* (1975) 49 Cal.App.3d 537, 540 [122 Cal.Rptr. 680].) In *Evans* the court stated that section 533 reflects the very sound and long standing public policy, also contained in Civil Code section 1668, which disapproves of contracts which directly or indirectly exempt anyone from personal responsibility for his own willful injury to another. The statutory exclusion (Ins. Code, § 533) provides the same exclusion as provided for in respondent American's policy of insurance. The words "willful" as used in the statute and "intentional" as used in the insurance policy are synonymous. (*Clemmer v. Hartford Insurance Co., supra,* 22 Cal.3d at p. 880.)

■ The clear implication of the decision in *Clemmer* is that the mental capacity of an insured is a litigable issue when an insurance company denies personal liability coverage for damage resulting from the willful act of the insured, on the ground that Insurance Code section 533 precludes such coverage. The court held that the trial court did not err in giving the following instruction (at p. 886): " 'If you find by a preponderance of the evidence that Dr. Lovelace had the mental capacity to intend to shoot and harm Dr. Clemmer when he caused his death, as well as the mental capacity to govern his own conduct, you will answer this question "Yes." [¶] If on the other hand, you find that at that time Dr. Lovelace was suffering from a mental disease or defect of such magnitude that he could not form the mental state I have just mentioned, then you will answer the question "No." ' " The court referred to a "clear line of authority in this state to the effect that even an act which is 'intentional' or 'willful' within the meaning of traditional tort principles will not exonerate the insurer from liability under Insurance Code section 533 unless it is done with a 'preconceived design to inflict injury' " (at p. 887).

The *Clemmer* court then, in approving the instruction given, stated (at p. 887): "The instruction given by the trial court simply applied this principle to a situation in which the actor's capacity to harbor the requisite 'design' was placed in issue through evidence bearing upon his mental state." We are then referred (in fn. 14) to "cases in other jurisdictions considering the mental condition of the actor in determining the willfulness of his act for insurance purposes." Cited is *Ruvolo v. American Cas. Co.* (1963) 39 N.J. 490 [189 A.2d 204]. Physician Ruvolo shot and killed his partner. After his arrest, he was certified as insane by two psychiatrists and committed to a state hospital. The widow of the victim then brought a wrongful death action against Ruvolo. His personal liability insurer refused to defend, because the policy expressly excluded death intentionally caused. The trial court entered summary judgment for the widow, and declared the policy exclusion inapplicable because a killing by an insane person could not be considered an intentional act (at p. 207).

On appeal the court held that the question of Ruvolo's capacity to intentionally kill was a factual question to be determined at trial. The trial court had erred in concluding that the certification of insanity in the criminal proceedings was determinative of that issue. The court held that policy coverage, despite an intentional injury clause, should *not* be limited to only circumstances where the mental incapacity of the insured

was such that he would be excused from criminal responsibility. In so holding, the court stated: "We hold that if the insured was suffering from a derangement of his intellect which deprived him of the capacity to govern his conduct in accordance with reason, and while in that condition acting on an irrational impulse he shot and killed Dr. LaFace, his act cannot be treated as 'intentional' within the connotation of defendant's insurance contract." (*Ruvolo*, 189 A.2d at p. 209.) Underlying that decision were two policy considerations: first, exclusions in insurance policies are to be strictly construed against the insurer, and second, justice demands particular emphasis on that strict construction doctrine where the conduct insured against involves possible injury or damage to members of the public.

The exclusion of intentional injury from coverage stems from a belief that an individual should not be exempt from the financial consequences of his own intentional injury to another. However, an individual who lacks substantial capacity to conform his conduct to the law will be uninfluenced by the existence or nonexistence of insurance coverage for the consequences of his acts. ■ Furthermore, the public's strong interest in the compensation of victims reinforces the well settled principle that such exclusionary clauses should be interpreted as narrowly as possible. ■ Thus the concept of insanity relevant to the exclusionary clause at issue here should have been more expansive than the concept of insanity accepted at the time of the trial as a defense against a criminal charge.

In its discussion of the appropriate inquiry to be made by the jury to determine what constitutes an intentional or willful act, the *Clemmer* court made no reference to the M'Naghten rule of insanity or the more recently adopted American Law Institute standard set forth in *People* v. *Drew, supra*, 22 Cal.3d 333.

Although the ALI test of criminal insanity more nearly comports to the proper rule than does M'Naghten, neither criminal standard is appropriate for determining whether an insured had sufficient mental capacity to invoke the exclusionary clause.

If Steven was suffering from a mental disease or defect which deprived him of capacity to intend to set the fire and cause the damage complained of, or which deprived him of the capacity to govern his conduct in accordance with reason, then he did not act intentionally as that word is

used in the exclusionary clause in respondent American's policy of insurance.

The court refused to instruct the jury, as requested by the Congregation, that the damage to the synagogue was not "intentionally" caused within the meaning of the exclusionary clause if Steven at the time he set the fire was suffering from a mental defect which "deprived him of the capacity to govern his conduct in accordance with reason . . . when he [was] impelled by an impulse which he did not have the power to resist." Although appellant's offered instruction was too broad, it was clear that the court was going to reject any instruction touching upon Steven's mental capacity. The refusal of the court to give such an instruction was error.

■ Appellant further contends that the court erred in refusing to instruct the jury that the burden of proof of the applicability of the exclusionary clause was on the insurer. No instruction as to the burden of proof was given. This failure also was error. The burden of bringing itself within an intentional injury exclusionary clause such as the one at issue is on the insurer. (*Clemmer, supra,* 22 Cal.3d at pp. 879-881.)

Judgment is reversed.

Feinberg, J., and Halvonik, J., concurred.

A petition for a rehearing was denied May 4, 1979, and respondent's petition for a hearing by the Supreme Court was denied May 30, 1979.