[Civ. No. 51274. First Dist., Div. Three. June 16, 1982.]

BANK OF CALIFORNIA, Plaintiff and Respondent, v.
PAN AMERICAN TIRE CORPORATION et al., Defendants and
Appellants.

COUNSEL

William W. Schofield and Crosby, Heafey, Roach & May for Defendants and Appellants.

James E. Gallagher and Ropers, Majeski, Kohn, Bentley, Wagner & Kane for Plaintiff and Respondent.

OPINION

SCOTT, J.—Defendants Richard Landof and Pan American Tire Corporation (Pan American Corp.) appeal from a judgment entered against them in excess of $670,000 after the grant of plaintiff Bank of California's motion for summary judgment. The principal question is whether Landof's prior conviction of conspiracy conclusively established defendants' liability in this civil action.

I

The first amended complaint filed by the Bank of California (BankCal) against these defendants also named as defendant David Glassman, the former operations manager of its San Leandro branch. The first cause of action alleged that the defendants conspired to convert a sum in excess of $800,000, which was paid to the account of Pan American Corp. In other causes of action, BankCal alleged breaches of contract and of implied contract, and sought imposition of a constructive trust. A default judgment in the amount of $670,230.23 was entered against defendant Glassman.

Plaintiff BankCal then moved for summary judgment or partial summary judgment against defendants Landof and Pan American Corp., on

the ground that according to principles of collateral estoppel, Landof's prior conviction in federal court of conspiracy conclusively determined defendants' liability for conversion in this case.

Among the documents submitted in support of the motion were the following: (1) an indictment against Glassman and Landof, charging Glassman with bank embezzlement and wilful misapplication of funds by a bank officer, and charging both men with conspiracy to commit an offense against the United States; (2) a judgment convicting Glassman of the offenses charged; (3) a judgment convicting Landof of conspiracy;[1] (4) a declaration of one of BankCal's attorneys, reporting a conversation with Glassman in which Glassman allegedly admitted that he and Landof obtained funds through a check-kiting scheme to capitalize and operate Pan American Corp.; and (5) a declaration by one of BankCal's officers, stating that as a result of the check-kiting scheme, BankCal was required to honor nine cashier's checks embezzled by Glassman. The nine checks were listed by check number, date, and amount, and totaled over $700,000. BankCal was able to recover over $75,000 from the defendants' bank accounts, for a net loss of $670,230.28.

After a hearing, the trial court granted the motion for summary judgment against Landof and Pan American Corp. as to the first cause of action. Pursuant to plaintiff's motion, its remaining causes of action were dismissed with prejudice; judgment in the amount of $670,230.28 was entered against both defendants.

## II

First, defendants contend that summary judgment was improperly granted because defendant Landof's criminal conviction did not necessarily determine all the triable issues of fact raised by BankCal's complaint and supporting documents.

BankCal's complaint alleged that Landof and Glassman conspired to convert a sum in excess of $800,000; as already indicated, that sum was later more precisely calculated. ■ Where a civil action charges a conspiracy and the commission of a wrongful act, the major significance of the conspiracy charge is that each participant may be held responsible as a joint tortfeasor, whether or not he or she directly par-

---

[1]While Landof was convicted after a jury trial, Glassman pleaded guilty.

ticipated in the wrongful act and regardless of the degree of his or her activity. (*Widdows* v. *Koch* (1968) 263 Cal.App.2d 228, 234 [69 Cal. Rptr. 464]; *Mayes* v. *Sturdy Northern Sales, Inc.* (1979) 91 Cal.App. 3d 69, 77 [154 Cal.Rptr. 43].) The gist of an action charging civil conspiracy is not the conspiracy but the damages suffered; a conspiracy, in and of itself, does not give rise to a cause of action unless a civil wrong has been committed resulting in damage. (*Widdows* v. *Koch, supra.*) ■ In this case, summary judgment was proper only if there was no triable issue of fact as to the formation and operation of the conspiracy, the wrongful act or acts done pursuant thereto, and the damage resulting from such acts. (See *Mayes* v. *Sturdy Northern Sales, Inc., supra.*)

Summary judgment is a drastic remedy and should be used with caution, so that it does not become a substitute for a trial on the merits. Nevertheless, summary judgment is an appropriate remedy when the doctrine of collateral estoppel refutes all triable issues of fact suggested by the pleadings and supporting documents. (*County of Alameda* v. *Sampson* (1980) 104 Cal.App.3d 584, 589-590 [163 Cal.Rptr. 915]; *People* v. *One 1964 Chevrolet Corvette Convertible* (1969) 274 Cal. App.2d 720, 725-726 [79 Cal.Rptr. 447].) ■ A party is collaterally estopped from relitigating an issue necessarily determined in a prior adjudication if (1) the issue decided in the previous litigation is identical with that presented in the action in question; (2) there was a final judgment on the merits in the first action; and (3) the party against whom the plea is asserted was a party or in privity with a party to the prior action. (*Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 810-813 [122 P.2d 892].) The doctrine of collateral estoppel may be applicable when a civil action follows a criminal prosecution; any issue necessarily decided in a prior criminal trial resulting in a conviction is conclusively determined as to the parties if it is involved in a subsequent civil action. (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 607 [25 Cal.Rptr. 559, 375 P.2d 439]; *People* v. *One 1964 Chevrolet Corvette Convertible, supra,* 274 Cal.App.2d at p. 726; *People* ex rel. *State of Cal.* v. *Drinkhouse* (1970) 4 Cal.App.3d 931, 935 [84 Cal.Rptr. 773].)

In *One 1964 Chevrolet, supra,* 274 Cal.App.2d 720, Frederick had been convicted of possession of marijuana, after several packages of the substance were seized from his father's car, which Frederick was using with his father's consent. The court affirmed summary judgment for the People in forfeiture proceedings against the car pursuant to former Health and Safety Code section 11610 et seq., on the ground that Fred-

erick's conviction conclusively determined his knowing possession of marijuana in the vehicle. (*Id.*, at pp. 726-727.)

In *Drinkhouse, supra*, 4 Cal.App.3d 931, property was conveyed to R, among others, at a tax sale. Both R and the tax collector were then convicted both of conspiracy to violate Government Code section 1090, which forbids county officers to be financially interested in contracts made by them in their official capacity, and of violating the section itself, R as an aider and abetter. The state sought to quiet title to the property, on the ground that the sale was void because of the tax collector's financial interest therein. The court affirmed summary judgment in favor of the state and against R, on the ground that when the jury convicted him as an aider and abetter, it necessarily must have determined that the tax collector was financially interested in the sale. (*Id.*, at p. 935.)

■ In this case, what was necessarily determined by the jury which convicted Landof of conspiracy in violation of 18 United States Code section 371 is not as readily ascertainable. To find a defendant guilty of a criminal conspiracy in violation of that section, the jury must find that the defendant entered into an unlawful agreement, and that at least one overt act, not necessarily in itself harmful to the government, was committed in furtherance of the conspiracy.[2] (*United States* v. *Andreen* (9th Cir. 1980) 628 F.2d 1236, 1248; *United States* v. *Kates* (E.D.Pa. 1976) 419 F.Supp. 846, 852.) All of the overt acts charged in an indictment for conspiracy need not be proved for conviction, and a general verdict of the jury without special findings does not indicate which of the means charged in the indictment were found to have been used in effectuating the conspiracy. (See *Emich Motors* v. *General Motors* (1951) 340 U.S. 558, 569 [95 L.Ed. 534, 544, 71 S.Ct. 408].)[3] ■ When it cannot be determined which means were used to carry out the unlawful purposes of a conspiracy, the collateral estoppel

[2]18 United States Code section 371 provides in relevant part: "If two or more persons conspire either to commit any offense against the United States ... and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined ... or imprisoned ... or both."

[3]*Emich Motors, supra*, 340 U.S. 558 involved a civil action to recover damages for a conspiracy in restraint of trade which followed a criminal conviction of conspiracy in restraint of interstate trade. (*Id.*, at p. 559 [95 L.Ed. at pp. 539-540].) The Supreme Court stated that what was decided by the criminal judgment must be determined by the trial judge hearing the civil action, upon an examination of the pleadings, the evidence submitted, the instructions under which the jury arrived at its verdict, and any opinions of the courts. (*Id.*, at p. 569 [95 L.Ed. at p. 544].)

effect of a finding of guilt on a general conspiracy count is limited to the essence of the conspiracy. (*United States* v. *Podell* (2d Cir. 1978) 572 F.2d 31, 36.)

The federal indictment against Glassman and Landof begins with several general charges, setting forth the substance of the scheme between the two men to embezzle money from BankCal, including the issuance of cashier's checks payable to Pan American Corp. without paying for them, and the deposit of those checks in Pan American's accounts. Among those general charges is an allegation that between July 27 and August 2, 1976, Glassman and Landof caused the issuance of checks in an amount over $800,000. Count three, the conspiracy charge against the two men, alleges that they conspired to commit embezzlement and the misapplication of funds. Several overt acts are specifically alleged, among them that on July 12 and July 26, 1976, the two caused the deposit of eight cashier's checks, in specified amounts.

■ In its order granting the motion for summary judgment, the court acknowledged that the nine checks for which BankCal sought recovery in this action were not those checks itemized among the overt acts in count three of the federal indictment. However, the court also pointed out that the conspiracy count incorporated by reference the broader charge that the two men caused checks to be issued between July 27 and August 2, 1976, a period which did cover the dates of the nine checks. While the court's observation was correct, it does not follow that the jury necessarily determined that the latter charge was true when it convicted Landof of conspiracy. Because proof of all the acts charged was not necessary for conviction, the jury may have determined that the two men caused the issuance of all, some, or even only one of the checks mentioned in the indictment. As a consequence, Landof's conviction did not necessarily determine that BankCal was damaged in the amount of $670,230.23, a triable issue of fact remained, and summary judgment was improperly granted.[4]

■ Defendant Landof also contends the trial court erred when it admitted the declaration of counsel as to a conversation he had with Landof's coconspirator Glassman. We address this issue only because it may arise again at trial. (See *Rader* v. *Thrasher* (1962) 57 Cal.2d 244, 252 [18 Cal.Rptr. 736, 368 P.2d 360].)

---

[4]In light of this conclusion, we need not reach defendant Pan American Corp.'s contention that collateral estoppel cannot be used to establish its liability because it was neither party nor in privity with a party to the criminal action.

Notwithstanding the reference to Evidence Code section 1224 in the court's order granting summary judgment, it is apparent from the court's description of the conversation as that of a coconspirator, and from the transcript of the hearing on the motion that the declaration was admitted pursuant to Evidence Code section 1223, not section 1224.[5] However, a conspirator's statements offered against his coconspirator are not made inadmissible by the hearsay rule only if the statements were made during the conspiracy and in furtherance thereof. (Evid. Code, § 1223; *People* v. *Saling* (1972) 7 Cal.3d 844, 852 [103 Cal.Rptr. 698, 500 P.2d 610].) Glassman's statements explaining the check-kiting scheme to the bank's lawyer were obviously not made during or in furtherance of the conspiracy, and were inadmissible hearsay.

Judgment is reversed.

White, P. J., and Barry-Deal, J., concurred.

---

[5]Evidence Code section 1224 provides: "When the liability, obligation, or duty of a party to a civil action is based in whole or in part upon the liability, obligation, or duty of the declarant, or when the claim or right asserted by a party to a civil action is barred or diminished by a breach of duty by the declarant, evidence of a statement made by the declarant is as admissible against the party as it would be if offered against the declarant in an action involving that liability, obligation, duty, or breach of duty." That section contemplates situations in which the obligation or duty of a third person is an essential operative fact in establishing the cause of action or defense involved, such as where a party has assumed responsibility for the obligations of a declarant. (*Brown* v. *Surety Co. of Pacific* (1981) 122 Cal.App.3d 614, 618-619 [176 Cal.Rptr. 143].) The section is inapplicable to the facts here, and we conclude that the court's reference to section 1224 in its order was a misstatement.