[No. B002984. Second Dist., Div. Seven. Oct. 5, 1984.]

ALLSTATE INSURANCE COMPANY, Plaintiff and Appellant, v.
WILLIAM A. OVERTON et al., Defendants and Respondents.

COUNSEL

Yusim, Stein & Hanger and Charles L. Fonarow for Plaintiff and Appellant.

Gianelli & Morris and Timothy J. Morris for Defendants and Respondents.

OPINION

JOHNSON, J.—Allstate Insurance Company (Allstate) appeals from a judgment declaring Allstate is obligated to provide a defense for its insured William Overton (Overton) in a personal injury action filed by David Lane (Lane). The issue posed is whether the mere fact of Overton's conviction of misdemeanor battery arising out of the incident that is the subject of Lane's action conclusively relieves Allstate of its duties to defend and indemnify Overton. We answer this question in the negative and affirm.

### FACTS AND PROCEEDINGS BELOW

Allstate instituted an action for declaratory relief (Code Civ. Proc., § 1060) against Overton and Lane. The action sought declaration Allstate was not required either to defend or indemnify Overton in Lane's lawsuit against him, which is still pending. The declaratory action was tried upon a stipulation of facts, which also provided for the trial court's consideration of certain deposition testimony by Overton and Lane. This testimony has not been made a part of the record on this appeal, however. The facts before us are as follows.

On May 11, 1981, Allstate issued to Overton a homeowner's insurance policy which included $100,000 "family liability coverage." With respect to "Family Liability Protection" the policy provided in relevant part: "*Losses We Cover*[:] We will pay all sums arising from the same loss which an insured person becomes legally obligated to pay as damages because of bodily injury or property damage covered by this part of the policy. [¶] We may investigate or settle any claim or suit for covered damages against an

insured person. If an insured person is sued for these damages, we will provide a defense with counsel of our choice, even if the allegations are not true. . . . [¶] *Exclusions—Losses We Do Not Cover*[:] [¶] 1. We do not cover bodily injury or property damage intentionally caused by an insured person. . . ."

On May 26, 1981, Overton became involved in an altercation during which Overton struck Lane in the face. The details of this incident are only sketchily disclosed by the stipulated facts and evidence in the record before us. This evidence consists of the stipulated testimony of one witness to the incident[1]; a police report[2]; and Overton's stipulated testimony that when he struck Lane he did not intend to injure him. The parties' stipulation further recites that Overton and Lane's accounts of what happened in the altercation differ; their respective deposition testimony, placed in evidence below but (as noted above) not before us, apparently includes Overton's assertion that he acted in response to Lane's initiation of physical contact.

Lane thereafter sued Overton for personal injuries on account of the incident. Lane's action was originally framed in one count of assault and battery. When Overton tendered defense of the action to Allstate it undertook his defense under a reservation of rights and proceeded to file the instant suit for declaratory relief, naming as defendants Overton and also Lane "because he is a potential third party beneficiary under [Allstate's] policy." Thereafter Lane amended his complaint to add an alternative cause of action alleging his injuries were caused by Overton's negligence.

The final and assertedly critical fact before the trial court was that Overton had been convicted of battery as a result of the May 26 incident. In this connection the parties' stipulation below recited: "As a result of the incident referred to above, defendant WILLIAM A. OVERTON was charged with battery. After a criminal trial he was found guilty of battery and was fined and placed on probation." None of the details or record of this trial and conviction were offered or entered in evidence below; the parties simply stipulated as just quoted and to the Los Angeles Municipal Court number of the criminal case.

---

[1] It was stipulated that if called as a witness Colleen Logan would testify as follows: At 12:35 p.m. on May 26 she heard angry voices in the hallway outside her office at the State Division of Labor Standards Enforcement. From her office door she saw Lane and Overton, accompanied by a woman, about 20 feet down the hall. From this vantage point Logan saw Overton hit Lane in the face and Lane fall with blood spurting from his eye. Logan approached the group and heard the woman ask Overton, "What did you do that for?" Overton replied, "It was worth the $200." Overton and the woman then quickly departed.

[2] The police report reiterated witness Logan's account (see fn. 1, *ante*) and included a statement by Lane that as he was leaving a hearing in which he had prevailed in a claim brought by Overton's woman friend, Overton verbally threatened him, an argument ensued, and Overton struck Lane under his left eye.

In argument to the trial court Allstate expressly conceded that absent Overton's conviction Allstate's duty to defend him in Lane's pending action would presently be incontestable and a fortiori the question of indemnity would not yet be subject to resolution. However, Allstate argued, as it does here, the battery conviction established by collateral estoppel that Lane's lawsuit was beyond the scope of the insurance policy's provisions for defense and indemnification. This contention was based on two grounds—first, the policy's exclusion of "bodily injury intentionally caused" and second, the parallel exclusion in Insurance Code section 533, which provides in relevant part "[a]n insurer is not liable for a loss caused by a wilful act of the insured . . . ." In response, Overton urged his judgment of conviction did not embrace a finding of intent to inflict bodily injury, necessary to bring either of these exclusions into effect. The trial court agreed Allstate's proof was insufficient to foreclose the duties to defend and indemnify and accordingly entered a judgment declaring Allstate was presently required to continue its defense of Lane's action.

## DISCUSSION

Here as below, Allstate contends Overton's battery conviction collaterally estops him from entitlement to defense or indemnification in Lane's action as a matter of law. We too focus upon the collateral estoppel effect of the conviction, not only because this is the essence of Allstate's claim but also because the remaining evidence below was disputed and inconclusive. Allstate does not challenge the judgment for insufficiency of evidence except to urge the collateral estoppel point.

It is settled a judgment of conviction in a criminal case may collaterally estop the defendant from relitigating in a subsequent civil action an issue necessarily decided in the criminal case. (E.g., *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 606-607 [25 Cal.Rptr. 559, 375 P.2d 439].) The prerequisites for such collateral estoppel are the same as required for use of a civil judgment in the same fashion: (1) a final judgment on the merits in the first action, (2) identity or privity among the parties in the first action and those against whom the estoppel is asserted, and (3) identity of the issue presented in the second action with one necessarily decided in the first. (*Id.,* at p. 604.) However, if this third element is lacking—that is, if the prior criminal action did not necessarily determine the very issue disputed in the second suit—collateral estoppel does not apply. (*Bank of California* v. *Pan American Tire Corp.* (1982) 132 Cal.App.3d 843, 849-850 [183 Cal.Rptr. 470].)

■ ■■■ Here it is uncontested a final judgment on the merits was rendered in Overton's battery prosecution,[3] and of course Overton was a party to that action as well as the present one.[4] ■ However, the critical and disputed question is whether the issue upon which indemnity coverage by Allstate depends was decided, "necessarily" and "identically," in the criminal case. ■ ■■■ Comparison of the exclusionary provisions upon which Allstate relies with the proof it presented concerning the determinations in the criminal case convinces us Allstate has not carried its burdens of proof in this regard.[5]

■ We look first to the language of Allstate's own exclusionary clause: "We do not cover bodily injury . . . intentionally caused by an insured." The policy further defines "bodily injury" in this context as "bodily injury, sickness or disease, including resulting death, care and loss of services . . . ." Overton's conviction of battery did not on its face necessarily decide Overton "intentionally caused bodily injury" of this type, of the nature asserted in Lane's complaint, or indeed at all. The judgment did determine Overton had committed "a willful and unlawful use of force or violence upon the person of another," Lane. (Pen. Code, § 242 (defining battery).) However, these statutory elements do not necessarily include or embrace a determination of *bodily injury* or, for that matter, that such *injury* was "intentionally caused." To the contrary, the element of "willfulness" involved in the offense, as specifically defined by Penal Code section 7, subdivision 1, "implies simply a purpose or willingness to commit an act [and] does not require any intent . . . to injure another . . . ." Similarly, the application of "force or violence" that constitutes the remaining element of the offense does not necessarily contemplate or require bodily harm or injury. (1 Witkin, Cal. Crimes (1963) § 258, pp. 243-244.) In short, just as "[i]t has long been established, both in tort and criminal law, that 'the least touching' may constitute battery" (*id.*), a conviction of this offense neither requires nor necessarily determines that the defendant "intentionally caused bodily injury" in the sense of physical harm.

---

[3]While a criminal judgment arising from a guilty plea does not qualify for use as collateral estoppel (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd., supra,* 58 Cal.2d at pp. 605-606), the parties here stipulated Overton had been convicted after a trial.

[4]As noted above, Allstate sought and seeks a declaratory judgment against Lane as well as Overton. Our resolution of the collateral estoppel question upon the element of identity of issues makes it unnecessary to decide whether Lane stands in privity with Overton for purposes of collateral estoppel use of the conviction. We note *Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 874-877 [151 Cal.Rptr. 285, 587 P.2d 1098] renders this questionable.

[5]An insurer disclaiming liability under an exclusionary clause bears the burden of proof on that issue (*Clemmer* v. *Hartford Insurance Co., supra,* 22 Cal.3d at pp. 879-880), and a party asserting collateral estoppel bears the burden of proving the elements required for its application (*Vella* v. *Hudgins* (1977) 20 Cal.3d 251, 257 [142 Cal.Rptr. 414, 572 P.2d 28]).

The deficiency of Allstate's collateral estoppel claim with respect to the element of intent appears more sharply upon consideration of the second, statutory basis upon which Allstate claims exclusion from coverage. Allstate informs us the exclusionary language of its policy is "an embodiment of Insurance Code section 533," which, to repeat, provides in relevant part "[a]n insurer is not liable for a loss caused by the wilful act of the insured . . . ." This assertion accords with prior authority that an exclusion worded as is Allstate's is identical in meaning and effect with the statutory language. (*Congregation of Rodef Shalom* v. *American Motorists Ins. Co.* (1979) 91 Cal.App.3d 690, 693, 695, fn. 2 [154 Cal.Rptr. 348].)

■ The above-quoted language of section 533 is implied as an exclusionary clause into every insurance contract. (E.g., *Evans* v. *Pacific Indemnity Co.* (1975) 49 Cal.App.3d 537, 540 [122 Cal.Rptr. 680].) Like other exclusionary provisions, it has been "construed strictly against the insurer and liberally in favor of the insured." (*Nuffer* v. *Insurance Co. of North America* (1965) 236 Cal.App.2d 349, 356 [45 Cal.Rptr. 918]; see *Congregation of Rodef Shalom* v. *American Motorists Ins. Co., supra,* 91 Cal.App.3d at p. 697.) More particularly, two recent Supreme Court decisions construing the statutory exclusion provide us controlling guidance in defining this clause. In *Peterson* v. *Superior Court* (1982) 31 Cal.3d 147, 159 [181 Cal.Rptr. 784, 642 P.2d 1305], the court stated section 533's concept of a "wilful act" does not extend to an act "performed without *intent to harm* . . . [but which] nevertheless result[s] in injury and possible exposure to punitive damages because it was done with conscious disregard for the rights or safety of others." (Italics added.) More positively, in *Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 887 [151 Cal.Rptr. 285, 587 P.2d 1098], the court referred to and approved a "clear line of authority in this state to the effect that even an act which is 'intentional' or 'willful' within the meaning of traditional tort principles will not exonerate the insurer from liability under Insurance Code section 533 unless it is done with a '*preconceived design to inflict injury.*' " (Italics added.)

These expressions by our high court establish that the species of "willfulness" contemplated by section 533 not only transcends recklessness but is something in the nature of specific intent to injure. ■ But such an intent is not necessarily determined by a judgment of conviction for battery. While that offense too includes an element of "willfulness" (see Pen. Code, § 242), that particular intent by definition "does not require . . . any intent to injure . . . ." (Pen. Code, § 7, subd. 1.) Indeed, the Supreme Court has held not only misdemeanor battery but even its related *felony* offense of assault with a deadly weapon are "general intent" offenses, not requiring a specific intent to inflict bodily injury. (*People* v. *Rocha* (1971) 3 Cal.3d 893, 899 [92 Cal.Rptr. 172, 479 P.2d 372].) And decisions following this

holding have concluded the latter offense, which itself involves "an attempt to commit a battery" (*id.*), may be established by proving "an act inherently dangerous to others . . . committed with a conscious disregard of human life and safety." (*People* v. *Lathus* (1973) 35 Cal.App.3d 466, 470 [110 Cal.Rptr. 921]; *People* v. *Martinez* (1977) 75 Cal.App.3d 859, 863 [142 Cal.Rptr. 515].) Contrasting these holdings concerning criminal assaults and batteries with the Supreme Court's construction of section 533, we cannot conclude that the instant conviction for battery *necessarily* determined Overton had acted with "intent to harm" (*Peterson* v. *Superior Court, supra,* 31 Cal.3d at p. 159) or "a preconceived design to inflict injury" (*Clemmer* v. *Hartford Insurance Co., supra,* 22 Cal.3d at p. 887).

Allstate insists *Evans* v. *Pacific Indemnity Co., supra,* 49 Cal.App.3d 537, compels a holding in its favor as a matter of law. To the contrary, *Evans* illustrates the deficiency of Allstate's proof here. In *Evans* the plaintiff insured had been convicted of assault by means of force likely to produce great bodily injury. (Pen. Code, § 245, subd. (a)(1).) His victim then obtained a civil judgment for assault and battery. When the insured sued his insurer for indemnity, the trial court made an "undisputed finding . . . that [the insured's] battery upon [the victim] was a wilful and intentional act, that [the insured] intended the harm that resulted therefrom, and that the tort judgment was based upon such conduct." (49 Cal.App.3d at p. 540.) Upon this "undisputed finding" the insurer's nonliability by reason of section 533 was deemed unassailable.

Had the trial court here made or been required to make an equivalent finding, a like conclusion as to Allstate's potential liability for indemnity would follow naturally. But unlike the insurer in *Evans,* Allstate has not proven the critical element of Overton's intention to commit the bodily injury sought to be redressed by Lane's pending suit. If and when such a determination is rendered, Allstate will escape liability just as the insurer in *Evans.*[6] But we are constrained to decide this appeal on the record before us. That record includes no finding or statement of decision concerning Overton's intent. Instead it contains conflicting stipulated testimony and evidence concerning his intent and a terse stipulation to Overton's conviction of an offense not requiring the type or level of intent contemplated by the exclusionary clause and statute. On this record, we cannot hold as a matter of law that Allstate is excused from indemnifying Overton.[7]

---

[6]Similarly, in the very recent case of *United States Fid. & Guar. Co.* v. *American Employer's Ins. Co.* (1984) 159 Cal.App.3d 277 [205 Cal.Rptr. 460], an insurer was held properly exonerated from liability by section 533 upon findings the insured had acted " '. . . with a preconceived design to inflict injury . . . .' " (*Id.,* at pp. 280, 286-287.)

[7]The nature of the record in this case is one of the factors distinguishing a recent decision in a somewhat similar case which was not cited to us by either party but of which we feel

With respect to the companion issue of Allstate's duty to defend Overton, our conclusion must necessarily be the same, for several reasons. Since Allstate failed to prove Lane's action is excluded from coverage, defense is required by the terms of Allstate's policy which provide Allstate will furnish a defense for its insured if he is sued for "covered damages." Absent a determination Lane's alleged injuries fall within the exclusions from coverage discussed above, Allstate must defend.

■ Furthermore, both under this policy and generally the duty to defend is broader than the obligation to indemnify: "the carrier must defend a suit which *potentially* seeks damages within the coverage of the policy." (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275 [54 Cal.Rptr. 104, 419 P.2d 168], italics in original.) *Gray* involved a situation much like Overton's. The insured had been sued for assault and his policy included an exclusion of coverage for "bodily injury . . . caused intentionally by . . . the insured." (*Id.,* at p. 267.) Holding that defense of this action had been required, the Supreme Court observed that even though the complaint included allegations of wrongdoing which could fall within the exclusion from coverage, the action presented several possibilities of a judgment for covered damages. The injured party's proof might have fallen short of his complaint or indeed plaintiff "could have amended his complaint to allege merely negligent conduct." (*Id.,* at p. 277.) In the instant matter Lane has done just that.

Thus under *Gray,* "[i]f the broad charge made, which claims an intentional or wilful tortious act, contains within it the potentiality of a judgment based upon nonintentional conduct, the indemnitor becomes liable to defend." (*Davidson* v. *Welch* (1969) 270 Cal.App.2d 220, 234 [75 Cal.Rptr.

compelled to take note. In *State Farm Fire & Casualty Co.* v. *Dominguez* (1982) 131 Cal.App.3d 1 [182 Cal.Rptr. 109], the court affirmed a declaratory judgment of noncoverage for a wrongful death action brought against an insured who had been convicted of first degree murder. The insurer had obtained judgment simply by proof of its policy and of the murder conviction. Appellants urged the insurer should have been required to adduce further proof concerning the offense and the murder conviction to negate the possibility the conviction had been for felony murder as opposed to murder committed with intent to cause death. The Court of Appeal agreed, but still affirmed the declaratory judgment by taking judicial notice of the record on appeal which had been before the same court when it had affirmed the murder conviction and which established that the judgment embraced a finding of intent to kill. (*Id.,* at p. 5.)

The present case differs in several respects. We do not have before us any information or record regarding Overton's conviction beyond the fact it occurred. Indeed there does not appear to have been any appeal taken from that conviction or any record consequently prepared. Moreover, the underlying offenses are substantially different: in contrast to the minimal intent required for misdemeanor battery, as discussed above, first degree murder other than simple felony murder generally requires a degree of intent easily embracing the "preconceived design to inflict injury" contemplated by section 533. (Compare *People* v. *Washington* (1965) 62 Cal.2d 777, 780 [44 Cal.Rptr. 442, 402 P.2d 130] with *Clemmer* v. *Hartford Insurance Co., supra,* 22 Cal.3d at p. 874, fn. 7.)

676].) With the final outcome of Lane's action as yet undetermined, and lacking a conclusive showing Overton's conduct falls within the policy's exclusions, we must concur with the trial court's declaration that Allstate presently bears responsibility to defend the pending suit.

DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Thompson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 30, 1985.