**STATE FARM FIRE AND CASUALTY COMPANY, Plaintiff–Appellee,**

v.

**ESTATE OF Elmer JENNER; Leonard Jenner, as Executor of the Estate of Elmer Jenner, Deceased, Defendants–Appellants.**

No. 87–2153.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 17, 1988.

Decided Sept. 8, 1988.

by Elmer Jenner's sexual molestation of a twelve-year-old boy. In granting summary judgment, the district court found that Elmer's actions were willful as a matter of law, or alternatively, that Jenner had failed to present any admissible or credible evidence to refute State Farm's evidence of intent.

Robert A. Smith, Mittleman & Smith, Sonoma, Cal., Alex Reisman, Colman, Reisman & Bourdon, San Francisco, Cal., A.J. Kutchins, Berkeley, Cal., for defendants-appellants.

Michael J. Brady, Redwood City, Cal., Gail Y. Norton, Ropers, Majeski, Kohn, Bentley, Wagner & Kane, San Francisco, Cal., for plaintiff-appellee.

## FACTS AND PROCEEDINGS BELOW

On September 26, 1985, the Sonoma County District Attorney filed an information against Elmer Jenner, charging him with sexually molesting a then twelve-year-old boy. Specifically, Jenner was charged with three counts of violating California Penal Code section 288(a) and two counts of violating section 288a(c).[1] Jenner pled guilty to all counts on October 27, 1985. Soon afterwards he committed suicide.

On May 30, 1986, the victim, through his guardian ad litem, filed a civil action against the Jenner estate. The complaint sought damages on theories of negligent and intentional tort. Leonard Jenner, as executor, tendered the defense of the action to State Farm. State Farm undertook the defense under a reservation of rights and brought this declaratory judgment action in federal court.

Before SCHROEDER and WIGGINS, Circuit Judges, and DIMMICK,* District Judge.

WIGGINS, Circuit Judge:

The estate of Elmer Jenner [Jenner] appeals the district court's grant of summary judgment in favor of State Farm Fire & Casualty. State Farm filed a complaint for declaratory relief seeking a determination that it had no duty to defend or indemnify Jenner against claims for damages caused

At all relevant times, Jenner was insured under a State Farm mobilehomeowners policy. The policy excluded coverage for "bodily injury or property damage which is expected or intended by the insured." State Farm moved for summary judgment relying on this exclusion and on *Allstate Ins. Co. v. Kim W.*, 160 Cal.App.3d 326, 206 Cal.Rptr. 609 (1984), holding that acts violating section 288 of the California Penal Code are "willful" as a matter of law. In response, Jenner cited a line of California cases, including *Clemmer v. Hartford Ins. Co.*, 22 Cal.3d 865, 587 P.2d 1098, 151 Cal.

---

* Hon. Carolyn R. Dimmick, United States District Judge for the District of Western Washington, sitting by designation.

1. Section 288(a) provides in part:

    Any person who shall willfully and lewdly commit any lewd or lascivious act ... upon or with the body, or any part or member thereof, of a child under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child, shall be guilty of a felony....

    Cal.Penal Code § 288(a) (West 1988). Section 288a(c) prohibits oral copulation with a person under fourteen.

Rptr. 285 (1978), holding that an intentional tort only relieves an insurance company of liability if "it is done with a 'preconceived design to inflict injury.'" *Id.* at 887, 587 P.2d at 1108, 151 Cal.Rptr. at 297. Jenner argued that Elmer Jenner did not have the subjective intent to harm the victim.

The district court granted summary judgment for State Farm on May 12, 1987, and Jenner timely appealed. We have jurisdiction under 28 U.S.C. § 1291.

## STANDARD OF REVIEW

This court reviews a grant of summary judgment de novo. *Dimidowich v. Bell & Howell,* 803 F.2d 1473, 1477 (9th Cir.1986), *modified,* 810 F.2d 1517 (1987). This de novo standard applies fully to the district court's interpretation of state law. *In re McLinn,* 739 F.2d 1395, 1403 (9th Cir.1984) (en banc).

## ANALYSIS

State Farm based its motion for summary judgment on the express exclusion in its policy for acts "expected or intended" by the insured and on section 533 of the California Insurance Code. Section 533 provides:

> An insurer is not liable for a loss caused by the *wilful act of the insured;* but he is not exonerated by the negligence of the insured, or of the insured's agents or others.

Cal.Ins.Code § 533 (West 1972) (emphasis added). Section 533 is part of every insurance contract and is equivalent to an exclusionary clause. *See State Farm Fire and Casualty Co. v. Bomke,* 849 F.2d 1218, 1219 n. 1 (9th Cir.1988) (applying California law); *Evans v. Pacific Indem. Co.,* 49 Cal. App.3d 537, 540, 122 Cal.Rptr. 680, 682 (1975). Moreover, an exclusion worded like the one in State Farm's policy is identical in meaning and effect with the statutory language. *See Allstate Ins. Co. v. Overton,* 160 Cal.App.3d 843, 849, 206 Cal.Rptr. 823, 827 (1984). This case turns, then, on the proper definition of a "willful" act under section 533.

The California Supreme Court has interpreted "willfulness" as applied to criminal conduct of the insured. In *Clemmer v. Hartford Ins. Co.,* 22 Cal.3d 865, 587 P.2d 1098, 151 Cal.Rptr. 285 (1978), Dr. Lovelace, the insured, shot and killed his employer, Dr. Clemmer. Lovelace was tried and convicted of second-degree murder. At the conclusion of the guilt phase, he withdrew his plea of not guilty by reason of insanity. Clemmer's survivors then obtained a default judgment for wrongful death against Lovelace. Hartford refused to pay the judgment because the killing was a willful act. The Clemmers argued that Lovelace lacked the mental capacity to intend to shoot and harm Dr. Clemmer and the jury agreed. *Id.* at 872–73, 587 P.2d at 1104, 152 Cal.Rptr. at 287–88.

On appeal, Hartford argued that the jury instruction on willfulness constituted prejudicial error because it defined willfulness in terms of Lovelace's mental capacity and effectively required the jury to find a specific intent to kill. The state Supreme Court found the instruction proper because:

> even an act which is "intentional" or "willful" within the meaning of traditional tort principles will not exonerate the insurer from liability under Insurance Code section 533 unless it is done with a *"preconceived design to inflict injury."*

*Id.* at 887, 587 P.2d at 1110, 151 Cal.Rptr. at 297 (emphasis added) (quoting *Walters v. American Ins. Co.,* 185 Cal.App.2d 776, 783, 8 Cal.Rptr. 665, 670 (1960)).

Subsequent California appellate cases have applied *Clemmer* to other types of criminal conduct and have further refined the willfulness definition. In *Congregation of Rodef Sholom,* an arson case, the court found that the insured did not act intentionally if he suffered "from a mental disease or defect which deprived him of capacity to intend to set the fire and cause the damage complained of, or which deprived him of the capacity to govern his conduct in accordance with reason...." *Congregation of Rodef Sholom v. American Motorists Ins. Co.,* 91 Cal.App.3d 690, 697–98, 154 Cal.Rptr. 348, 352 (1979). An-

other appellate court, in a case involving an intentional battery, found that section 533 required "something in the nature of specific intent to injure." *Overton*, 160 Cal. App.3d at 849, 206 Cal.Rptr. at 827; *see also California Shoppers, Inc., v. Royal Globe Ins. Co.*, 175 Cal.App.3d 1, 32, 221 Cal.Rptr. 171, 186 (1985) (section 533 requires specific intent to injure in intentional breach of contract action).

The parties do not dispute here that Elmer Jenner intended to commit the acts complained of. Jenner argues, however, that Elmer did not *intend to harm* the victim as required by *Clemmer* and *Overton*. Jenner presented doctors' declarations alleging that Elmer was a pedophile and considered the sexual contact to be part of a caring, nurturing relationship and thus he could not have intended to harm the victim.

One California appellate court has specifically addressed whether sexual acts with children are committed with the requisite "intent to harm" to fall within the section 526 exclusion. In *Allstate Ins. Co. v. Kim W.*, 160 Cal.App.3d 326, 206 Cal.Rptr. 609 (1984), a minor sued the insured, Leroy Korte, for injuries resulting from sexual assault. Allstate filed a declaratory judgment action. Korte admitted engaging in acts violating section 288 of the California Penal Code, but denied that his insurance policy afforded him no coverage. The court found that Allstate was entitled to judgment on the pleadings on alternative grounds. First, "under certain circumstances, the nature of the intentional act of the insured is such that an intent to cause at least some harm can be inferred as a matter of law" and "an act which constitutes a violation of Penal Code section 288

is such an act." *Id.* at 332, 206 Cal.Rptr. at 613. The court reasoned that since section 288 was intended to protect children, the legislature had determined that some harm "is inherent and inevitably results" from sexual assaults on children. *Id.* at 332–33, 206 Cal.Rptr. at 613.

Alternatively, the court found that even if coverage was not automatically precluded by Korte's admission of acts violating section 288, Korte's answer did not set up a defense. Korte did not allege that he had no intent to harm his victim. The court thus distinguished *Clemmer* and *Rodef Shalom* because in those cases the insured had raised an issue as to his mental capacity. *Id.* at 333–34, 206 Cal.Rptr. at 613–14.

This court has followed *Kim W.*, recognizing that child molestation is willful and thus excluded from insurance coverage under section 533. *Allstate Ins. Co. v. Gilbert*, 852 F.2d 449, 452 (9th Cir.1988); *Bomke*, 849 F.2d 1220; *American States Ins. Co. v. Borbor*, 826 F.2d 888, 891 (9th Cir.1987). Jenner argues, however, that State Farm was obligated to defend him, despite the fact that the complaint alleged acts of child molestation. First, he claims that the *Kim W.* opinion was aberrational and irreconcilable with *Clemmer* because it focused on the inevitability of harm, rather than the actual intent of the perpetrator.[2] We are bound by our own precedent to follow *Kim W. See Gilbert*, 852 F.2d at 4, *Bomke*, 849 F.2d at 1220. Moreover, we do not find *Clemmer* and *Kim W.* to be irreconcilable. *Kim W.* did not dispense with the subjective intent to harm requirement in all cases, but held only that as a policy matter, such intent to harm may be presumed from admitted violations of section 288. *Clemmer* did *not* forbid the use of

---

**2.** When the state's highest court has not decided an issue, this court's task is to predict how the state high court would resolve it. *Dimidowich*, 803 F.2d at 1477. This court looks for guidance to decisions of the state intermediate appellate courts and to decisions from other jurisdictions. *Id.*

The majority of other jurisdictions that have examined the issue of willfulness in child molestation cases have endorsed the *Kim W.* approach. *See CNA Ins. Co. v. McGinnis*, 282 Ark. 90, 666 S.W.2d 689, 691 (1984); *Linebaugh v.*

*Berdish*, 144 Mich.App. 750, 376 N.W.2d 400, 405 (1985); *Horace Mann Ins. Co. v. Independent School Dist.*, 355 N.W.2d 413, 416 (Minn. 1984); *Vermont Mutual Ins. Co. v. Malcolm*, 128 N.H. 521, 517 A.2d 800, 802–03 (1986); *Western Nat'l Assurance Co. v. Hecker*, 43 Wash.App. 816, 719 P.2d 954, 960 (1986); *but see State Auto Mutual Ins. Co. v. McIntyre*, 652 F.Supp. 1177, 1219 (N.D.Ala.1987) (Alabama Supreme Court would disagree with other jurisdictions and would refuse to apply exclusion in some cases of nonviolent child molestation).

presumptions in some cases to establish specific intent. Further, *Clemmer* was not a child molestation case. As this court has noted, unlike a crime such as assault and battery or homicide, child molestation cannot be committed negligently or in self-defense. *See Gilbert,* 852 F.2d at 452.

■ Second, Jenner argues that unlike both *Kim W.* and *Gilbert,* in this case the insured's mental capacity has been put in issue. In *Kim W.,* the court held alternatively that *even if* the insured's admission of conduct violating section 288 did not foreclose a claim that the conduct was not willful, the insured's answer failed to allege that he did not intend to harm his victim. *Kim W.,* 160 Cal.App.3d at 333, 206 Cal.Rptr. at 613–14. Likewise, in *Gilbert,* the insured claimed that the alleged acts of molestation were committed with diminished mental capacity and therefore without an intent to cause harm. This court stated: "Even if we were to accept this argument, [the insured] did not allege any facts supporting such a contention...." *Gilbert,* 852 F.2d at 452.[3] We interpret *Gilbert* to stand for the proposition that allegations of child molestation in a third-party complaint compel a finding of intentional wrongdoing unless the insured presents credible evidence of some kind of diminished mental capacity that precluded the insured from forming an intent to harm.[4]

We must determine, therefore, whether Jenner presented sufficient evidence regarding Elmer Jenner's subjective intent to withstand summary judgment. Jenner presented the declarations of two doctors who had never met Elmer but had reviewed his medical records and concluded that Elmer was a pedophile who did not intend to harm children. Jenner also submitted the declaration of Steve Mittleman, Elmer's defense attorney. Mittleman stated that Elmer never felt that he in any way intended to harm or foresaw any harm to the boys that he befriended and had sexual relations with. The district court found that *even if* Elmer's acts were not willful as a matter of law, Jenner's evidence was insufficient to dispute State Farm's evidence of intent. Specifically, the court stated that the expert declarations presented serious questions of admissibility and credibility.

■ State Farm bears the burden of proof on the willfulness issue because it must show that Elmer's actions fell within the policy exclusion. *Clemmer,* 22 Cal.3d at 879–80, 587 P.2d at 1105, 151 Cal.Rptr. at 292. State Farm submitted Elmer Jenner's criminal record. Elmer's guilty plea, however, cannot be used as collateral estoppel in this litigation. *See Teitelbaum Furs, Inc. v. Dominion Ins. Co.,* 58 Cal.2d 601, 605, 375 P.2d 439, 441, 25 Cal.Rptr. 559, 561 (1962), *cert. denied sub nom. Teitelbaum Furs, Inc. v. American Home Ins. Co.,* 372 U.S. 966, 83 S.Ct. 1091, 10

---

**3.** In the two other cases where this court has discussed *Kim W.,* it did not reach the issue of whether the inference of willfulness could be overcome. The insured in *Bomke* also denied an intent to harm his victim despite his guilty plea to kidnapping, rape and forced oral copulation. Apparently, the only evidence of the insured's lack of intent was his own self-serving statement and so the court did not address the issue. *See Bomke,* 849 F.2d at 1220. In *Borbor,* the issue on appeal was whether section 533 barred coverage for one who was vicariously liable for the insured acts of child molestation. The district court's holding that the insured's acts were willful as a matter of law was not contested. *See Borbor,* 826 F.2d at 891.

In a district court case decided prior to *Bomke* and *Gilbert,* the estate of the insured child molester argued that he was entitled to insurance coverage because he acted out of affection for the child and thus did not intend to

harm her. *See State Farm Fire & Casualty Ins. Co. v. Abraio,* 683 F.Supp. 220, 222 (N.D.Cal. 1988) *appeal docketed,* No. 88–1799 (9th Cir. Mar. 8, 1988). It is unclear from the opinion whether the insured presented any credible evidence to support this claim. The court held that under *Kim W.,* the focus should be on the act itself rather than the actor's subjective intent and that child molestation is inherently harmful. *Id.* at 222. We disapprove this case to the extent it holds that acts of child molestation are conclusively "willful," even where evidence of the insured's mental incapacity to harm is presented.

**4.** Jenner also argues that *Kim W.,* establishes an irrebutable presumption that offends due process by removing an element of proof from the plaintiff's case. Because we decide that the *Kim W.* presumption is not conclusive, we do not address the constitutional issue.

L.Ed.2d 130 (1963). Although Elmer's guilty plea is evidence that he committed the acts, it does not conclusively establish that he acted with the requisite intent to harm.

■ Assuming the evidence of Elmer's guilty plea was sufficient to shift the burden to Jenner, the doctors' declarations, if admissible, were sufficient to raise a genuine issue of fact. The district court erred in finding the declarations not credible and inadmissible hearsay. Questions of credibility generally should not be resolved on summary judgment. *See S.E.C. v. Koracorp Indus. Inc.*, 575 F.2d 692, 699 (9th Cir.), *cert. denied sub nom. Helfat v. SEC*, 439 U.S. 953, 99 S.Ct. 348, 58 L.Ed.2d 343 (1978). Moreover, State Farm does not dispute that expert testimony may be based on hearsay so long as the expert relies on facts or data "of a type reasonably relied on by experts in ... the ... field." *See* Fed.R.Evid. 703; *see also Bieghler v. Kleppe*, 633 F.2d 531 (9th Cir.1980). Jenner's experts' reliance on medical records and on consultation with Elmer's former therapist clearly met this standard. The expert declarations thus adequately presented a genuine issue of fact.

## CONCLUSION

Under *Kim W.* and *Gilbert*, acts in violation of section 288 are willful as a matter of law *unless* the insured presents credible evidence that he did not intend to harm his victim. Jenner has done so here. Accordingly, we REVERSE the district court's grant of summary judgment in favor of State Farm and REMAND for further proceedings.

REVERSED AND REMANDED.