59 Cal.Rptr.3d 799 (2007)
151 Cal.App.4th 227
Jonathan DELGADO, Plaintiff and Appellant,
v.
INTERINSURANCE EXCHANGE OF the AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA, Defendant and Respondent.
No. B191272.
Court of Appeal of California, Second District, Division Three.
May 24, 2007.
*802 Ford, Walker, Haggerty & Behar and K. Michele Williams, Long Beach, for Defendant and Respondent.
Glaser & Damone and Robert P. Damone, Long Beach, for Plaintiff and Appellant.
ALDRICH, J.

INTRODUCTION
The appellant, Jonathan Delgado, appeals from the dismissal of his first amended complaint against the respondent Inter-insurance Exchange of the Automobile Club of Southern California (ACSC). Delgado had sued Craig Reid, ACSC's insured, for personal injuries (the underlying action). When the action was tendered to ACSC, it denied coverage and refused a defense. After settling his claim against Reid, in exchange for a stipulated judgment and an assignment of all of Reid's rights against ACSC, Delgado filed this action for declaratory relief, breach of the implied covenant of good faith and fair dealing, and for recovery on the stipulated judgment pursuant to Insurance Code section 11580, subdivision (b)(2).
In spite of the pleadings in the underlying action, which were sufficient to demonstrate a potential for coverage under the ACSC homeowner's policy issued to Reid, the trial court determined, on ACSC's demurrer, that there was no coverage under the policy and that the stipulated judgment agreed to by Delgado and Reid was "contrived." We conclude that this was error. As the underlying complaint contained allegations demonstrating a potential for coverage under the ACSC policy, *803 ACSC's refusal to provide its insured with a defense was without justification and constituted bad faith as a matter of law. The remaining issues raised as to actual coverage under the policy, the enforceability in whole or in part of the stipulated judgment, and the amount of Delgado's resulting damages, if any, raised issues of fact not resolvable on demurrer. We will therefore reverse and remand with directions.

FACTUAL AND PROCEDURAL BACKGROUND[1]
On November 7, 2003, Reid kicked Delgado and struck him in the nose while the two were standing on the sidewalk across the street from Reid's residence. Delgado sustained physical injury as a result. On March 8, 2004, through his guardian ad litem, Delgado filed the underlying action against Reid. He alleged two causes of action. In the first, he alleged that Reid had "in an unprovoked fashion and without any justification physically struck, battered and kicked ... Delgado repeatedly causing serious and permanent injuries." In the second, Delgado alleged that Reid had "negligently and unreasonably believed and [sic] that [Reid] was engaging in self defense and unreasonably acted in self defense when [Reid] negligently and unreasonably physically and violently struck and kicked ... Delgado repeatedly causing serious and permanent injuries." (Italics added.)[2]
Reid had a homeowner's policy providing $100,000 liability coverage with ACSC and tendered Delgado's complaint to it for a defense. On or about April 22, 2004, without apparently conducting a factual investigation into the claim asserted against Reid, ACSC denied coverage and refused to provide a defense. ACSC did so on two grounds: (1) there was no "occurrence," as that term is defined in the policy, since an intentional unprovoked attack could not be considered an accident; and (2) the conduct of Reid (its insured), as alleged in the complaint, arose out of his intentional acts and thus triggered the policy's intentional acts exclusion or the statutory "wilful acts" exclusion that is incorporated into every policy of liability insurance. (Ins.Code, 533; see fn. 6, post.)
Thereafter, Reid and Delgado reached a settlement of the underlying action. The parties stipulated on the record that Reid's use of force constituted a negligent use of excessive force in the exercise of his right of self-defense. The stipulation was accepted by the court in the underlying action.[3] As part of the settlement, Delgado *804 dismissed the intentional tort cause of action. Judgment in the amount of $150,000 on the negligence claim was then entered in the underlying action. Reid agreed to pay Delgado $25,000 and assigned to him all of his (i.e., Reid's) claims against ACSC arising out of ACSC's refusal to provide a defense under the policy. In return, Delgado gave Reid a partial satisfaction of judgment and a covenant not to execute on the remainder of the $150,000 judgment.
Delgado then filed this action against ACSC asserting four causes of action for declaratory relief, for damages for bad faith, and for recovery on his stipulated judgment under the provisions of Insurance Code section 11580, subdivision (b)(2).[4] Delgado sought a declaration that ACSC owed a duty to defend Reid in the underlying action and to indemnify him for the resulting judgment.
ACSC demurred to the complaint. At the hearing, the trial court asked what facts Delgado had pled in the underlying action that showed the ultimate fact that Reid believed he was acting in self defense. Delgado's counsel responded that such facts need not have been pled because the critical facts alleged were that Reid's conduct was not intentional where he mistakenly believed he had the right to defend himself. The trial court sustained the demurrer with leave to amend to allow Delgado to plead, among other things, facts to establish coverage under the policy.
In his first amended complaint, Delgado alleged six causes of action. Delgado sought a declaration that ACSC owed Reid a duty to defend (first cause of action) and a duty to indemnify (second cause of action), as well as recovery of the amount of the stipulated judgment under Insurance Code section 11580, subdivision (b)(2) (third cause of action). He also sought recovery for damages for ACSC's bad faith for failure to defend (fourth cause of action), failure to indemnify (fifth cause of action), and failure to make medical payments (sixth cause of action).
In response to the trial court's directions, Delgado amended his complaint to quote from Reid's policy and to allege that "at the time of the incident, Craig Reid was acting without intent to injure or break plaintiffs nose, but with intent to defend himself and his family, including his wife and children from what he perceived was an imminent threat of harm and with fear that plaintiff may wrongfully enter and evict him from his insured property. [Delgado] further alleges that Mr. Reid's reaction to what he perceived was an imminent threat of harm was an over-reaction, was not willful or malicious and was an accident that caused injuries and damages to plaintiff within the meaning of Mr. Reid's insurance policy."
The amended complaint also alleged the stipulated facts, dismissal of the intentional tort cause of action, and the entry of judgment on the negligence cause of action in the underlying lawsuit. Attached to and incorporated with the amended complaint were Reid's insurance policy, Delgado's complaint in the underlying action, and ACSC's letter to Reid denying both a defense and coverage.
*805 ACSC demurred to the amended complaint. It argued that Delgado's amended complaint failed to state facts which established that the subject matter of the underlying action was covered by the policy because, as alleged, Reid's conduct did not fall within the policy's definition of "occurrence." Focusing on the underlying complaint's intentional tort cause of action, ACSC reasoned that "[a]n unprovoked physical attack, as that alleged, can never be considered `accidental'" Hence, ACSC argued, all of the causes of action failed.
The trial court sustained the demurrer without leave to amend. It found that "[manipulation of the settlement and stipulated judgment in an attempt to expose [ACSC] to liability is contrived." (Italics added.) Citing Montrose Chemical Corp. v. Superior Court (1993) 6 Cal.4th 287, 297-298, 24 Cal.Rptr.2d 467, 861 P.2d 1153, the court reasoned that "[m]erely framing the incident in terms of negligence is not conclusive of the duty to defend." The trial court found that "[characterizing assault and battery as an `accident' is disingenuous at best." The court observed that Delgado had pled no facts in the underlying action "to support the conclusion that Reid believed he was engaging in self defense. There are no facts pled as to what Delgado may have done to be perceived as an imminent threat. Plaintiff still has not made allegations to support any finding that Reid acted in self defense or that his conduct was in any other manner justified." The action was dismissed and Delgado filed this timely appeal.

CONTENTIONS
Delgado contends that his amended complaint alleged sufficient facts to demonstrate that his claim against Reid, as set out in his complaint in the underlying action, presented the possibility of coverage under the policy and that this was sufficient, without more, to give rise to ACSC's duty to defend. Whether ACSC has any duty to indemnify under the policy will depend on whether there is actual coverage and that issue cannot be resolved on demurrer.

DISCUSSION

1. Standard of Review

"In reviewing a demurrer that is sustained without leave to amend, an appellate court assumes the truth of (1) all facts properly pleaded by the plaintiff, (2) all facts contained in exhibits to the complaint, (3) all facts that are properly the subject of judicial notice, and (4) all facts that reasonably may be inferred from the foregoing facts. [Citations.]" (Neilson v. City of California City, supra, 133 Cal. App.4th at p. 1305, 35 Cal.Rptr.3d 453, citing Blank v. Kirwan (1985) 39 Cal.3d 311, 318, 216 Cal.Rptr. 718, 703 P.2d 58.)
For the purpose of determining the effect of the complaint, its allegations are liberally construed with a view toward substantial justice. (Quelimane Co. v. Stewart Title Guaranty Co. (1998) 19 Cal.4th 26, 43, fn. 7, 77 Cal.Rptr.2d 709, 960 P.2d 513, quoting from Code Civ. Proc., § 452.)
"The reviewing court must reverse the judgment if (1) the complaint, liberally construed, has stated a cause of action under any possible legal theory; or (2) the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citations.] The burden of proving a reasonable possibility of cure is squarely on the plaintiff. [Citation.]" (Neilson v. City of California City, supra, 133 Cal.App.4th at p. 1305, 35 Cal.Rptr.3d 453.)

*806 2. The Duties to Defend and to Indemnify

When determining whether an allegation might reasonably be covered, thus triggering its duty to defend, ACSC was obligated to review the complaint in the underlying action along with any extrinsic evidence available to it either at the inception of Delgado's lawsuit against Reid, or at the time of tender. "It has long been a fundamental rule of law that an insurer has a duty to defend an insured if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement. [Citations.].... [T]he determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy. [Citations.]"[5] (Waller v. Truck Ins. Exchange, Inc. (1995) 11 Cal.4th 1, 19, 44 Cal.Rptr.2d 370, 900 P.2d 619, italics added; accord, Foster-Gardner, Inc. v. National Union Fire Ins. Co. (1998) 18 Cal.4th 857, 880, 77 Cal.Rptr.2d 107, 959 P.2d 265; Swain v. California Casualty Ins. Co. (2002) 99 Cal.App.4th 1, 8, 120 Cal.Rptr.2d 808 [extrinsic facts are those known by insurer "if not `at the inception of the third party lawsuit,' then `at the time of tender'"].)
An insurer "must defend a suit which potentially seeks damages within the coverage of the policy...." (Gray v. Zurich Insurance Co. (1966) 65 Cal.2d 263, 275, 54 Cal.Rptr. 104, 419 P.2d 168; Wausau Underwriters Ins. Co. v. Unigard Security Ins. Co. (1998) 68 Cal.App.4th 1030, 1036, 80 Cal.Rptr.2d 688.) In other words, the duty to defend arises whenever the lawsuit against the insured seeks damages on any theory that, if proved, would be covered by the policy. Thus, a defense is excused only when "`the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage.' [Citation.]" (Montrose Chemical Corp. v. Superior Court, supra, 6 Cal.4th at p. 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153, italics omitted, quoting Gray v. Zurich Insurance Co., supra, at p. 276, fn. 15, 54 Cal.Rptr. 104, 419 P.2d 168; see also, Devin v. United Services Auto. Assn. (1992) 6 Cal.App.4th 1149, 1157, 8 Cal. Rptr.2d 263.) "[T]he insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot." (Montrose Chemical Corp. v. Superior Court, supra, at p. 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153.)(Montrose Chemical Corp. v. Superior Court, supra, 6 Cal.4th at p. 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153, italics omitted, quoting Gray v. Zurich Insurance Co., supra, at p. 276, fn. 15, 54 Cal.Rptr. 104, 419 P.2d 168; see also, Devin v. United Services Auto. Assn. (1992) 6 Cal.App.4th 1149, 1157, 8 Cal.Rptr.2d 263.) "[T]he insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot." (Montrose Chemical Corp. v. Superior Court, supra, at p. 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153.)
With respect to the question of indemnification, the test is different. That duty requires a determination of actual coverage. (Montrose Chemical Corp. v. Admiral Ins. Co. (1995) 10 Cal.4th 645, 659, fn. 9, 42 Cal.Rptr.2d 324, 913 P.2d 878.) It is often difficult to determine whether a third party lawsuit falls within *807 the indemnification coverage until a final judgment is obtained in the underlying action. To resolve this dilemma, a duty to defend is imposed whenever the insurer ascertains facts which give rise to the possibility of coverage. (Fresno Economy Import Used Cars, Inc. v. United States Fid. Guar. Co. (1977) 76 Cal.App.3d 272, 278, 142 Cal.Rptr. 681.) To conclude otherwise would "create a peculiar form of coverage restricted to only those cases which the insurer decides are brought on meritorious legal and factual grounds ... [which] would hardly give the insured the peace of mind and security which the insured has every right to expect." (California Ins. Guarantee v. Wood (1990) 217 Cal.App.3d 944, 948, 266 Cal.Rptr. 250.) Thus, "[a]n insurer may have a duty to defend even when it ultimately has no obligation to indemnify, either because no damages are awarded in the underlying action against the insured or because the actual judgment is for damages not covered under the policy. [Citation.]" (Borg v. Transamerica Ins. Co. (1996) 47 Cal. App.4th 448, 454, 54 Cal.Rptr.2d 811; accord, Mirpad, LLC v. California Ins. Guarantee Assn. (2005) 132 Cal.App.4th 1058,1068, 34 Cal.Rptr.3d 136.)

3. The Facts Alleged in the Underlying Action Against Reid Presented the "Possibility" of Coverage under ACSC's Policy

The central question here is whether the underlying complaint or other facts available to ACSC gave rise to a potential liability under the policy when ACSC denied Reid a defense in the underlying action.
The ACSC policy provides liability coverage for "[b]odily injury ... caused by an occurrence to which this coverage applies." "Occurrence" is defined as "an accident, including continuous or repeated injurious exposure to essentially the same conditions, which, during the policy period, results in bodily injury...." Liability claims arising from the insured's intentional misconduct, however, are not covered. The policy expressly excludes coverage for "a. Bodily injury ... arising out of: [¶] ... [¶] (2) Intentional acts or omissions committed by or at the direction of any insured that are: [¶] (a) of a willful and malicious nature; or [¶] (b) grossly negligent or reckless; and which could reasonably be expected to result in bodily injury.... This applies whether or not the insured forms the intent or has the mental capacity to form the intent to cause bodily injury...."[6] (Italics added.)
ACSC argues that the underlying complaint alleged intentional conduct that forecloses any possibility of coverage under the policy with the result that it owed no duty to defend. Delgado contends that the allegations of the underlying complaint gave rise to the potential for coverage triggering ACSC's duty to defend Reid. He argues, although his complaint against Reid included an alleged intentional tort, it also included allegations that Reid believed he was acting in self defense and had negligently and excessively exercised that right. Thus, Delgado argues, ACSC had to know at the time that it denied a defense, that the allegations of the second cause of action, if found true, would give rise to legal damages owed by Reid as a result of an occurrence under the policy. We agree with Delgado.
*808 This case is similar to Gray v. Zurich Insurance Co., supra, 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168. There, a Mr. Jones sued the insured, Gray, alleging that Gray, "`[w]ilfully, maliciously, brutally and intentionally assaulted'" Jones. (Id. at p. 267, 54 Cal.Rptr. 104, 419 P.2d 168.) In his letter notifying Zurich of the suit and requesting a defense, Gray stated that "he had acted in self defense." (Ibid.) Zurich refused to defend on the ground the complaint alleged an intentional tort, which was excluded from coverage in the policy. (Ibid.) In holding that Zurich owed Gray a duty to defend, the Supreme Court explained that the duty to defend arises whenever there is a potential for judgment based on covered conduct. (Id. at p. 276, 54 Cal.Rptr. 104, 419 P.2d 168.) As the Gray court put it, "Jones' complaint clearly presented the possibility that he might obtain damages that were covered by the indemnity provisions of the policy. Even conduct that is traditionally classified as `intentional' or `wilful' has been held to fall within indemnification coverage. Moreover, despite Jones' pleading of intentional and wilful conduct, he could have amended his complaint to allege merely negligent conduct. Further, plaintiff might have been able to show that in physically defending himself, even if he exceeded the reasonable bounds of self-defense, he did not commit wilful and intended injury, but engaged only in nonintentional tortious conduct. Thus, even accepting the insurer's premise that it had no obligation to defend actions seeking damages not within the indemnification coverage, we find, upon proper measurement of the third party action against the insurer's liability to indemnify, it should have defended because the loss could have fallen within that liability." (Id. at p. 277, 54 Cal.Rptr. 104, 419 P.2d 168, italics added, fn. omitted; see also Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2006) 7:573 to 7:584, pp. 723 through 7B-26:)[7]
Likewise, in Mullen v. Glens Falls Ins. Co. (1977) 73 Cal.App.3d 163,140 Cal.Rptr. 605, the insurer refused to defend or indemnify on the ground that the underlying action was based on an intentional assault, which conduct the policy excluded from coverage. However, at the time of the refusal to defend, there was a potential for liability with the result that the refusal was wrongful. The Mullen court explained that the alleged injuries "were the result of a fight; for all the insurance company could have known at that time, plaintiff started the fight and was struck by [the insured] in self-defense. It is now settled that injuries resulting from acts committed by an insured in self-defense are not `intended' or `expected' within the meaning of those terms as customarily used in an exclusionary clause like the one involved in the present case. [Citations.]" (Id. at p. 170, 140 Cal.Rptr. 605, italics added; see also Allstate Ins. Co. v. *809 Overton (1984) 160 Cal.App.3d 843, 206 Cal.Rptr. 823.)[8]
Applying the principles articulated in Gray and Mullen, it is clear that the underlying complaint pled facts showing that a potential for coverage existed under the ACSC policy. Delgado's second cause of action against Reid alleged that Reid acted in self-defense; that is, Delgado's injuries were caused by unintentional conduct. As Mullen explained, "[A]n insured might be able to show that in physically defending himself, even if he exceeded the reasonable bounds of self-defense, he did not commit willful and intended injury, but engaged only in nonintentional tortious conduct. [Citations.]" (Mullen v. Glens Falls Ins. Co., supra, 73 Cal.App.3d at p. 171, 140 Cal.Rptr. 605; Gray v. Zurich Insurance Co., supra, 65 Cal.2d at pp. 273, 277, 54 Cal.Rptr. 104, 419 P.2d 168.) Courts have held that "[i]f the insured mistakenly believed that he had a right to defend himself, or was mistaken with regard to the extent with which he could use force, the act would not be intentional and coverage would exist" because "the focus [is placed] upon the mental state of the insured when undertaking a course of conduct." (David Kleis, Inc. v. Superior Court (1995) 37 Cal.App.4th 1035, 1048, 44 Cal.Rptr.2d 181; Gray v. Zurich Insurance Co., supra.) Stated otherwise, the complaint in the underlying action showed potentially covered conduct, i.e., conduct that was not "intentional acts" or "grossly negligent or reckless; and which could reasonably be expected to result in bodily injury" such as would be excluded from the policy's coverage. The complaint showed potentially covered conduct because it alleged plainly that Reid acted in self-defense. Thus, at the time Reid tendered the underlying action to ACSC for a defense, ACSC was clearly aware of facts that gave rise to potential liability under its policy triggering its duty to defend Reid. (Waller v. Truck Ins. Exchange, Inc., supra, 11 Cal.4th at p. 19, 44 Cal.Rptr.2d 370, 900 P.2d 619.) As a matter of law, ACSC's duty to defend was thus manifest at the outset.
We reject ACSC's assertion that the self-defense allegations in the underlying complaint did not bring Reid's conduct within the policy's coverage where "the language pled [is] conclusory and without factual support." We are reviewing the sustaining of a demurrer. Consequently, we must accept as true the allegations pled and all reasonable inferences therefrom, and give them a liberal construction. (Neilson v. City of California City, supra, 133 Cal.App.4th at p. 1305, 35 Cal.Rptr.3d 453.) "The rules of pleading require, with limited exceptions not applicable here, only general allegations of ultimate fact. [Citations.] The plaintiff need not plead evidentiary facts supporting the allegation of ultimate fact. [Citation.] A *810 pleading is adequate so long as it apprises the defendant of the factual basis for the plaintiffs claim. [Citations.]" (McKell v. Washington Mutual, Inc. (2006) 142 Cal. App.4th 1457, 1469-1470, 49 Cal.Rptr.3d 227.) The underlying complaint's allegations were sufficient to apprise ACSC of the potential for coverage and hence the immediate duty to defend. Delgado's operative complaint against ACSC therefore requires no additional facts beyond those already pled as amended at the court's invitation. Delgado's factual support must be left to a later stage of this litigation.
In sum, where such conduct, as alleged in the underlying complaint, was not necessarily intentional, it was potentially a covered occurrence triggering ACSC's duty to defend. (Gray v. Zurich Insurance Co., supra, 65 Cal.2d at p. 277, 54 Cal.Rptr. 104, 419 P.2d 168; Mullen v. Glens Falls Ins. Co., supra, 73 Cal.App.3d at pp. 171-172, 140 Cal.Rptr. 605.) This is particularly so where there is no claim that ACSC had any extrinsic facts eliminating the potential for coverage. (Waller v. Truck Ins. Exchange, Inc., supra, 11 Cal.4th at p. 19, 44 Cal.Rptr.2d 370, 900 P.2d 619.)[9] The trial court abused its discretion in sustaining the demurrer to the first and second causes of action.[10]

4. Delgado is Entitled to Proceed with His "Direct Action" Against ACSC under Insurance Code, section 11580, subdivision (b)(2)[11]
Having concluded that the allegations of the underlying complaint facially gave rise to a duty to defend (and that the issue of ACSC's duty to indemnify remains to be resolved), we turn to the question whether the instant action could be dismissed on a demurrer based on the finding, at this stage of litigation, that the stipulated judgment in the underlying action was "contrived." Put another way, was the trial court justified in determining that there could, as a matter of law, be no coverage for Delgado's judgment under the ACSC policy?
*811 We addressed this issue in Pruyn v. Agricultural Ins. Co. (1995) 36 Cal.App.4th 500, 42 Cal.Rptr.2d 295 (Pruyn), where the facts were substantially similar to those presented here. In Pruyn, when the insured received the third-party claimant's complaint against it, it tendered the action to its insurers who denied coverage and refused to provide a defense. (Id. at pp. 509-510, 42 Cal.Rptr.2d 295.) Left without a defense from its insurers, the insured settled the claimant's case in lieu of trial. The settlement was favorable to the claimant and the insured gave the claimant an assignment of its rights against the insurers in exchange for the claimant's covenant to not execute on the judgment. (Id. at p. 511, 42 Cal.Rptr.2d 295.) The trial court in the underlying action found the settlement was made in good faith. The third-party claimant then brought an action against the insurers under Insurance Code section 11580, subdivision (b)(2) to enforce a stipulated judgment entered in the underlying action against the insured. On appeal, we addressed the question of whether the stipulation for judgment accompanied by a covenant not to execute was enforceable against the insurer. (Id. at pp. 513, 516, 42 Cal.Rptr.2d 295.)
We observed that "[c]ourts have for some time accepted the principle that an insured who is abandoned by its liability insurer is free to make the best settlement possible with the third party claimant, including a stipulated judgment with a covenant not to execute. Provided that such settlement is not unreasonable and is free from fraud or collusion, the insurer will be bound thereby. [Citations.]" (Pruyn, supra, 36 Cal.App.4th at p. 515, 42 Cal. Rptr.2d 295.) We acknowledged that "a stipulated or consent judgment which is coupled with a covenant not to execute against the insured brings with it a high potential for fraud or collusion.... [A] stipulated judgment should only bind an insurer under circumstances which protect against the potential for fraud and collusion." (Id. at p. 518, 42 Cal.Rptr.2d 295.)[12] However, we held that "[i]n a later reimbursement action against the insurer, based upon a breach of the contractual obligation to provide a defense, `a reasonable settlement made by the insured to terminate the underlying claim ... may be used as presumptive evidence of [1] the insured's liability on the underlying claim, and [2] the amount of such liability. [Citations.]' [Citations.]" (Id. p. 515, 42 Cal. Rptr.2d 295.) Because liability is based only on evidence giving rise to a presumption, "the bona fides of the settlement, and thus its enforceability against the defendant insurers, cannot be determined against plaintiff on demurrer." (Id. at p. 523, 42 Cal.Rptr.2d 295, italics added.)
We reasoned, where an insured has been abandoned by his or her insurer and elects to enter into a settlement declaring the insured's liability to avoid an adverse judgment or to mitigate costs, "`the question whether the liability of the insured was one which the contract of insurance covered is still open, as is also the question as to the fact of liability and the extent thereof, and these questions may be litigated *812 and determined in the action brought by the insured to recover the amount so paid in settlement.'" (Pruyn, supra, 36 Cal. App.4th at p. 528, 42 Cal.Rptr.2d 295, italics added.) In such case, the settlement "entitle[s the insured] to an evidentiary presumption, in a subsequent action against the insurer to enforce policy provisions, as to the `insured's liability on the underlying claim, and the amount of such liability.' [Citation.]" (Id. at p. 527, 42 Cal.Rptr.2d 295.) "The settlement, or a judgment rendered upon a stipulation of such a settlement, becomes presumptive evidence only of the liability of the insured and the amount thereof, which presumption is subject to being overcome by proof on the part of the insurer. [Citations.]' [Citation.]" (Id. at p. 528, 42 Cal.Rptr.2d 295.)
To give rise to the presumption that the insured was liable in the underlying action, we explained, the third-party claimant in the subsequent enforcement action must produce evidence of the basic foundational facts. Such foundational facts are that (1) the insurer wrongfully failed or refused to provide coverage or defense, (2) the insured entered into a settlement of the litigation, (3) which was reasonable in the sense that it reflected an informed and good faith effort by the insured to resolve the claim. (Pruyn, supra, 36 Cal.App.4th at p. 528, 42 Cal.Rptr.2d 295.) Once the presumption is raised, the burden of proof shifts to the insurers to persuade the trier of fact, by a preponderance of the evidence, that the insured's settlement did not represent a reasonable resolution of the claimant's claim or that the settlement was the product of fraud or collusion. (Id. at p. 530, 42 Cal.Rptr.2d 295.) Hence, we held that the trial court erred in sustaining the demurrers without leave to amend because the claimant's complaint had sufficiently alleged, or the claimant maintained amendment could be made to allege, that the insured had been wrongfully abandoned by the insurer and a reasonable settlement had been made. (Id. at p. 531, 42 Cal.Rptr.2d 295.)
Applying the Pruyn rule here, the trial court necessarily erred in making a finding upon demurrer that the settlement between Delgado and Reid was "contrived." As in Pruyn, the complaint and accompanying documents show that Reid tendered Delgado's lawsuit to ACSC, which declined a defense and coverage. Reid then entered into settlement with Delgado and assigned his rights against ACSC to Delgado and received from Delgado a covenant not to execute on the stipulated judgment. The operative amended complaint thus adequately alleged that (1) Reid had been wrongfully abandoned by ACSC, and (2) Reid entered into a settlement, (3) which was reasonable because it reflected an informed and good faith effort to resolve the claim. ACSC may proceed to adduce evidence to rebut the presumption that the settlement reflected the existence and amount of Reid's liability to Delgado.
ACSC argues that the facts set out in the underlying amended complaint provides "an indicia of collusion" supporting the trial court's decision to sustain the demurrer. ACSC cites what it considers to be excessive damages, and its interpretation of the language of the underlying complaint. While these facts are certainly relevant to the evidentiary showing that it will have to make under the Pruyn standard, the trial court's finding here that the underlying settlement was contrived and collusive necessarily required a weighing of evidence, which is improper at the demurrer stage. As we explained in Pruyn, "the bona fides of the settlement, and thus its enforceability against the defendant insurers, cannot be determined against plaintiff on demurrer." (Pruyn, supra, 36 Cal.App.4th at p. 523, 42 Cal.Rptr.2d 295.) *813 Therefore, the trial court abused its discretion in sustaining the demurrer to the third cause of action. Provided the trial court determines on remand that there is actual coverage under the ACSC policy, and evidence is presented to the trial court of the foundational facts sufficient to raise the presumption discussed above, Delgado will be entitled to recover on his judgment unless ACSC carries its evidentiary burden of demonstrating that the settlement entered into with Reid was unreasonable or the product of fraud or collusion.

5. ACSC Acted in Bad Faith, as a Matter of Law, in Refusing to Provide a Defense to Reid in the Underlying Action

As the Supreme Court recently explained, "[a]n insurer must defend its insured against claims that create a potential for indemnity under the policy. [Citations.] ... [¶] ... [¶] The defense duty arises upon tender of a potentially covered claim and lasts until the underlying lawsuit is concluded, or until it has been shown that there is no potential for coverage. [Citation.] When the duty, having arisen, is extinguished by a showing that no claim can in fact be covered, `it is extinguished only prospectively and not retroactively.' [Citations.] [¶] On the other hand, `in an action wherein none of the claims is even potentially covered because it does not even possibly embrace any triggering harm, of the specified sort within the policy period caused by an included occurrence, the insurer does not have a duty to defend. [Citation.] ... [¶] From these premises, the following may be stated: If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage. On the other hand, if as a matter of law, neither the complaint nor the known extrinsic facts indicate any basis for potential coverage, the duty to defend does not arise in the first instance." (Scottsdale Ins. Co. v. MV Transportation (2005) 36 Cal.4th 643, 654-655, 31 Cal.Rptr.3d 147, 115 P.3d 460.)
The coverage dispute in this case plainly turns upon a factual dispute, not a legal one.[13] As the Scottsdale court made clear, there is a distinction to be made between a factual and a legal dispute over coverage with respect to the insurer's defense obligation. When the dispute is factual in nature, the potential for coverage arises and exists until that dispute is conclusively resolved. (Montrose Chemical Corp. v. Superior Court, supra, 6 Cal.4th at p. 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153.) Indeed, the very *814 existence of a factual coverage dispute establishes the potential for coverage and thus the duty to defend. (Horace Mann Ins. Co. v. Barbara B. (1993) 4 Cal.4th 1076, 1085, 17 Cal.Rptr.2d 210, 846 P.2d 792; Mirpad, LLC v. California Ins. Guarantee Assn., supra, 132 Cal.App.4th at p. 1068, 34 Cal.Rptr.3d 136.) This settled principle has a significant impact on the analysis of the insured's claim that an insurer has acted in bad faith when it refused to provide the insured with a defense to a potentially covered claim.
The term "bad faith," as used in the context of an insured's claim against his or her insurer, is simply a shorthand reference to a claimed breach by the insurer of the covenant of good faith and fair dealing that is implied in every contract of insurance. (Gruenberg v. Aetna Ins. Co. (1973) 9 Cal.3d 566, 573-574, 108 Cal.Rptr. 480, 510 P.2d 1032.) In the case of a policy of liability insurance, this covenant obligates the insurer, among other things, to undertake the insured's defense in good faith if there exists a potential for coverage under the policy of the claim asserted in an action filed against the insured. (Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc. (2000) 78 Cal. App.4th 847, 881, 93 Cal.Rptr.2d 364.)
By itself, of course, an insurer's refusal to defend the insured against a third party claim covered by the policy is only a breach of contract. If, however, the insurer's refusal also constituted a breach of the implied covenant of good faith and fair dealing, then the insurer is also liable in tort. (See Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc., supra, 78 Cal.App.4th at p. 881, 93 Cal. Rptr.2d 364.) In order to demonstrate such a breach it must be shown that the insurer, in refusing to provide a defense, was acting unreasonably (i.e., with no reasonable basis for its action) or without proper cause. If the insurer declines to perform a contractual duty owed under the policy with proper cause, it may still be liable for breach of contract, but it cannot be held liable for a breach of the implied covenant. (California Shoppers, Inc. v. Royal Globe Ins. Co. (1985) 175 Cal.App.3d 1, 54, 221 Cal.Rptr. 171.)
This principle is addressed by the "genuine dispute" doctrine that has been developed in first party cases. As we said, in a first party case, "where there is a genuine issue as to the insurer's liability under the policy for the claim asserted by the insured, there can be no bad faith liability imposed on the insurer for advancing its side of that dispute. [Citation.] While an insurer must give as much consideration to the interests of its insured as it does to its own [citation], `it is not required to disregard the interests of its shareholders and other policyholders when evaluating claims....' [Citations.] In other words, an insurer is entitled to give its own interests consideration when evaluating the merits of an insured's claim. [Citation.]" (Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co. (2001) 90 Cal.App.4th 335, 347, 108 Cal.Rptr.2d 776.) Thus, the genuine dispute doctrine "holds that an insurer does not act in bad faith when it mistakenly withholds policy benefits, if the mistake is reasonable or is based on a legitimate dispute as to the insurer's liability. [Citations.]" (Century Surety Co. v. Polisso (2006) 139 Cal.App.4th 922, 949, 43 Cal. Rptr.3d 468.) A "genuine dispute" exists where the insurer's conduct in denying coverage was objectively reasonable; its subjective intent is irrelevant. (Morris v. Paul Revere Life Ins. Co. (2003) 109 Cal. App.4th 966, 973, 135 Cal.Rptr.2d 718.)
It is not entirely clear, however, to what extent that the "genuine dispute" doctrine will apply in third party cases, such as the one before us. It has been applied in third party cases to a dispute between the insurer *815 and the insured with respect to the duty to indemnify. (See CalFarm Ins. Co. v. Krusiewicz (2005) 131 Cal.App.4th 273, 286, 31 Cal.Rptr.3d 619; Dalrymple v. United Services Auto. Assn. (1995) 40 Cal. App.4th 497, 523, 46 Cal.Rptr.2d 845.) The doctrine has not yet been applied, however, in a published decision involving an insurer's refusal to provide a defense.[14] This is where the distinction between a factual and a legal dispute over the defense obligation is critical. To restate the Supreme Court's articulation of the point in its recent Scottsdale decision, "[i]f any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage. On the other hand, if, as a matter of law, neither the complaint nor the known extrinsic facts indicate any basis for potential coverage, the duty to defend does not arise in the first instance." {Scottsdale Ins. Co. v. MV Transportation, supra, 36 Cal.4th at p. 655, 31 Cal.Rptr.3d 147,115 P.3d 460, italics added.)
Thus, in the case of a legal dispute over the insurer's duty to defend, the genuine dispute doctrine probably would apply. If the insurer had raised a legitimate, arguable question as to its liability, but turned out to have been wrong, it would be liable for breach of contract, but it would not be liable for a breach of the implied covenant or "bad faith." The reason is that, in such circumstances, it was acting with a reasonable basis for its action; that is, with proper cause.[15] As Scottsdale emphasized, when there is a legal dispute over coverage, the existence of that dispute does not create a potential for coverage and "the duty to defend does not arise in the first instance, and the insurer may properly deny a defense. Moreover, the law governing the insurer's duty to defend need not be settled at the time the insurer makes its decision. As several courts have explained, subsequent case law can establish, in hindsight, that no duty to defend ever existed. `If the terms of the policy provide no potential for coverage, ... the insurer acts properly in denying a defense even if that duty is later evaluated under case law that did not exist at the time of defense tender. [Citations.]' [Citations.]" (Scottsdale Ins. Co. v. MV Transportation, supra, 36 Cal.4th at pp. 657-658, 31 Cal. Rptr.3d 147, 115 P.3d 460.)
The same cannot be said, however, for a factual dispute as to coverage. As we have shown, a potential for coverage establishes the duty to defend. Such a potential necessarily arises from the existence *816 of a factual dispute as to coverage under the policy. Thus, an insurer faced with a pleading such as the one filed against the insured Reid in this case, would have no reasonable basis for concluding that a defense obligation was not owed. It could not assert that it had a legitimate or reasonable argument that its insured's actions were intentional and thus not covered under the policy. It was the very existence of the unresolved factual dispute over whether Reid's actions were intentional or negligent that created the potential for coverage in the first place, thereby establishing the duty to defend. Thus, ACSC, in refusing Reid a defense, acted unreasonably and without proper cause, as a matter of law. Whether Delgado suffered any actual damages as a result of ACSC's refusal of a defense and if so, in what amount, are matters that will have to be resolved on remand by the trial court, but there can be no doubt that ACSC acted in bad faith when it refused to provide Reid with a defense.[16] The trial court improperly sustained ACSC's demurrer to the fourth cause of action alleged in Delgado's first amended complaint.

6. The Question as to Whether ACSC Acted in Bad Faith in Refusing to Indemnify Reid May Not Be Resolved on Demurrer

Whether ACSC owes a duty to indemnify Reid (and thus his assignee Delgado) will entirely depend on whether there is actual coverage under the policy. That issue will not be resolved until the trial court, upon remand, determines whether Reid (1) acted intentionally in striking Delgado under circumstances that preclude an "occurrence" and/or trigger the application of the intentional acts exclusion (or Ins. Code, § 533) or (2) acted negligently (e.g., excessive use of force in asserting a perceived right of self-defense). Assuming the trial court determines that there is coverage and ACSC is liable to pay indemnity under the policy, then (and only then) may the court turn to the question of whether ACSC's denial of coverage was done in "bad faith." (Waller v. Truck Ins. Exchange Inc., supra, 11 Cal.4th at p. 36, 44 Cal.Rptr.2d 370, 900 P.2d 619; Love v. Fire Ins. Exchange (1990) 221 Cal.App.3d 1136, 1151, 1153, 271 Cal.Rptr. 246.) That issue will have to be resolved by application of the principles we have already discussed with respect to bad faith and the genuine dispute doctrine as applied to the dispute over the existence of actual coverage. The issue is not one that properly may be resolved on demurrer and the trial court thus erroneously sustained ACSC's demurrer to the fifth and sixth causes of action.

DISPOSITION
The judgment of dismissal is reversed. The matter is remanded with directions to conduct further proceedings not inconsistent with the views expressed herein. Delgado shall recover his costs on appeal.
KLEIN, P.J., and CROSKEY, J., concur.
NOTES
[1] The facts that we recite are taken from the first amended complaint filed by Delgado (the operative pleading herein) which incorporates, as an exhibit, a copy of his complaint against Reid in the underlying action. As this action comes to us on demurrer, we must assume the truth of the allegations set out in that pleading. (Neilson v. City of California City (2005) 133 Cal.App.4th 1296, 1305, 35 Cal.Rptr.3d 453.)
[2] In addition, Delgado alleged that Reid had acted "intentionally [sic] and with malice and oppression, violently struck, battered and kicked ... Delgado in an unprovoked fashion and without justification...." This allegation obviously relates to a claim for punitive damages which Delgado also sought in his pleading.
[3] The stipulation, as reflected in the record of the underlying action, provided: "1. DECEDENT CRAIG REID was negligent in his use of force in defense of himself and his family on minor JONATHAN DELGADO on 11/7/03 and that such negligence caused substantial damages to minor JONATHAN DELGADO, including but not limited to, a displaced facture to his nose requiring surgery, neck pain, back pain and migraine headaches that are ongoing and that JONATHAN DELGADO will require medical care for his injuries for an undetermined period into the future. [¶] 2. The reasonable and necessary medical expenses received by JONATHAN DELGADO to date as a result of the injuries sustained arising from the negligence of CRAIG REID exceed $10,000.00."
[4] Under Insurance Code section 11580, subdivision (b)(2), a judgment creditor of an insured may file an action to recover on that judgment directly against the insurer whose policy provides liability coverage for the insured's action that resulted in the judgment. (See fn. 11, post.)
[5] California courts make no legal distinction between the terms "possibility of coverage" and "potential for coverage." (Montrose Chemical Corp. v. Superior Court, supra, 6 Cal.4th at p. 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153.)
[6] See also Insurance Code section 533, which provides, in pertinent part, "[a]n insurer is not liable for a loss caused by the wilful act of the insured;...." ACSC belatedly cites to this provision to bolster its argument that Delgado's injuries were not covered by the policy. However, insofar as the underlying complaint alleges the possibility that Reid was acting nonintentionally, this provision is not triggered at this stage of the lawsuit.
[7] Gray first relied on the rules applicable to adhesionary contracts to hold that the insurance company had a duty to defend its insured in a personal injury action brought against the insured for an alleged intentional tort even though the policy excluded intentional bodily injury from coverage. Gray held that the insurer could not rely upon a limitation in its obligation to defend because the limitation was not conspicuous, plain, and clear. (Gray v. Zurich Insurance Co., supra, 65 Cal.2d at pp. 273-275, 54 Cal.Rptr. 104, 419 P.2d 168.) ACSC points to that portion of Gray in an attempt to distinguish it from this case. However, Gray provided an alternative ground for its holding that the insurance company had a duty to defend. (Id. at p. 275, 54 Cal.Rptr. 104, 419 P.2d 168.) Gray declared that the duty to defend must be tested against coverage provided by the policy and arises whenever the insurer "ascertains facts which give rise to the potential of liability under the policy." (Id. at pp. 276-277, 54 Cal.Rptr. 104, 419 P.2d 168.)
[8] We are unpersuaded by ACSC's attempt to distinguish Allstate Ins. Co. v. Overton, supra, 160 Cal.App.3d 843, 206 Cal.Rptr. 823. There, the insured was convicted of misdemeanor battery as the result of the underlying incident in which he was seen hitting the plaintiff. (Id. at p. 846, 206 Cal.Rptr. 823.) Allstate filed a declaratory relief action to determine whether it had a duty to defend and indemnify the insured in the plaintiff's ensuing suit against him. Allstate relied on a stipulated record and the insured's policy's exclusion for "`bodily injury ... intentionally caused by an insured person....'" (Ibid.) The appellate court affirmed the judgment finding that the stipulated record did not foreclose the duties to defend and indemnify because the statutory elements of the battery conviction did not require the finding that the insured intended to commit bodily injury. (Id. at pp. 848-850, 206 Cal.Rptr. 823.) Overton is instructive because there, the possibility of coverage for nonintentional conduct existed even when that conduct was a misdemeanor battery. That is the insurer did not demonstrate coverage was not conceivably possible.
[9] ACSC's contention that the occurrence was not covered by this policy because the injuries occurred across the street from Reid's house is disingenuous. The liability portion of Reid's policy covers "bodily injury sustained as a result of an accident to which this coverage applies" and the coverage "applies to: [¶] ... [¶] ... persons off the insured location [Reid's residence] if the bodily injury: [¶] a. arises out of a condition in the insured location or the ways immediately adjoining; or [¶] b. is caused by the activities of any insured...." (Italics added.)
[10] Delgado's second cause of action for declaratory relief as to ACSC's liability to indemnify Reid under the policy may not be foreclosed by demurrer for the same reasons already discussed with respect to the duty to defend issues raised by the first cause of action. Until it is determined, upon remand, whether or not there is actual coverage under the ACSC policy for Reid's claim, Delgado's right to the requested declaratory judgment as to such coverage liability cannot be resolved. Based on the record that we have before us, it is an issue that may not be resolved on demurrer.
[11] Insurance Code section 11580 reads in relevant part: "A policy insuring against losses set forth in subdivision (a) shall not be issued or delivered to any person in this state unless it contains the provisions set forth in subdivision (b). Such policy, whether or not actually containing such provisions, shall be construed as if such provisions were embodied therein.... [ ] ...

"(b) Such policy shall not be thus issued or delivered to any person in this state unless it contains all the following provisions: [ ] ...
"(2) A provision that whenever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment."
[12] In Pruyn, we rejected the insurer's reliance on Smith v. State Farm Mut. Auto. Ins. Co. (1992) 5 Cal.App.4th 1104, 7 Cal.Rptr.2d 131, where the insurer refused a defense but the court found that the stipulated judgment entered into between the insured and the claimant was not binding on the insurer. (Id. at p. 1114, 7 Cal.Rptr.2d 131.) We reasoned, "[m]erely because plaintiff's complaint is based upon a judgment which was entered pursuant to a stipulation and was accompanied by a covenant not to execute, it does not follow that the defendant insurers were entitled to the dismissal granted by the trial court." (Pruyn, supra, 36 Cal.App.4th at p. 522, 42 Cal.Rptr.2d 295.)
[13] The distinction between a legal and a factual dispute in the insurance context can be illustrated thusly: a legal dispute arises, for example, when there is a question whether the undisputed facts constitute an "occurrence" under the policy (A-Mark Financial Corp. v. CIGNA Property & Casualty Companies (1995) 34 Cal.App.4th 1179, 1192, 40 Cal.Rptr.2d 808), or when coverage can be determined as a matter of law, based solely on interpretation of the contract. (See e.g., Gray v. Zurich Insurance Co., supra, 65 Cal.2d at p. 274, 54 Cal.Rptr. 104, 419 P.2d 168 ["the insured could not reasonably expect protection under an automobile insurance policy for injury which occurs from defect in a stairway ... [or] for an injury involving an automobile under a general comprehensive policy which excluded automobile coverage"].) By comparison, a factual dispute is one in which the determination of coverage turns on disputed facts. As we discuss below, whenever there is a factual dispute as to the existence of coverage, there is no legal basis for denying a defense. (Amato v. Mercury Casualty Co. (1993) 18 Cal.App.4th 1784, 1790, 23 Cal.Rptr.2d 73.)
[14] In Century Surety Co. v. Polisso, supra, 139 Cal.App.4th 922, 43 Cal.Rptr.3d 468, the court had before it the argument that the doctrine applied in third party duty to defend cases (id. at p. 949, 43 Cal.Rptr.3d 468) but concluded that the insurer could not demonstrate a basis for its application in that case. Because a potential for coverage under the policy issued by Century Surety was reflected by the allegations of the complaint and extrinsic facts known to the insurer, "there was no legitimate dispute" as to Century Surety's duty to provide a defense. (Id. at p. 952, 43 Cal.Rptr.3d 468.)
[15] In the case of a legal coverage dispute, whether the insurer's refusal to defend is in bad faith will depend on the objective reasonableness of its legal position on the coverage issue (i.e., whether its position with respect to the coverage issue was objectively reasonable and legitimate). This is a matter to be resolved by the court (not a jury) and the applicable standard seems analogous to the "objective legal tenability" standard that governs the "probable cause" analysis in malicious prosecution cases. (See e.g., Sheldon Appel Co. v. Albert & Oliker (1989) 47 Cal.3d 863, 868, 877-886, 254 Cal.Rptr. 336, 765 P.2d 498; Downey Venture v. LMI Ins. Co. (1998) 66 Cal.App.4th 478, 496-97, 78 Cal.Rptr.2d 142.)
[16] Such a conclusion does not place an undue burden on a liability insurer. When faced with a third party claim where a potential for coverage arises by reason of a dispute over the existence of such coverage, the insurer may elect to provide the insured with a defense under a reservation of rights as to the coverage issue(s). (See Blue Ridge Ins. Co. v. Jacobsen (2001) 25 Cal.4th 489, 497, 106 Cal. Rptr.2d 535, 22 P.3d 313.) Such action would not only preserve the insurer's right to contest those coverage issues (ibid.), but also would preclude any claim of bad faith based upon the assertion that the insurer had improperly failed to provide a defense.